OPINION OF THE COURT
 

 Titone, J.
 

 In this action premised on the defendant insurer’s alleged bad-faith failure to accept a settlement offer made by plaintiff’s counsel in a personal injury action, the principal issue is whether the evidence adduced at trial was sufficient to establish "bad faith.” We conclude that the insurer’s failure to respond to plaintiff’s time-restricted demand for settlement within the full policy limits, at a time when the insured’s liability remained under investigation, was insufficient to establish a prima facie case of insurance bad faith. Moreover, there was nothing more in the conduct or inaction of the insurer that would qualify as bad faith under the circumstances of this case. Accordingly, we reverse and dismiss the complaint.
 

 I.
 

 At approximately 10:15 p.m. on the evening of April 19, 1985, then 16-year-old Carmine Rosato picked up 19-year-old plaintiff Frank Pavia and a second youth and began driving around the Bensonhurst section of Brooklyn in a vehicle owned by Rosato’s mother and insured by defendant State Farm Mutual Automobile Insurance Company with a $100,000 policy limit. Rosato, whose learner’s permit did not authorize nighttime driving, apparently attempted to negotiate a corner
 
 *450
 
 at an excessive speed, lost control of the vehicle when he encountered a double-parked car, and ultimately collided with a car owned and operated by Joseph Amerosa. The injuries sustained by plaintiff Pavia in the accident rendered him a hemiplegic.
 

 In October 1985, Pavia commenced a personal injury action against the Rosatos and Mr. Amerosa. The record reveals that as early as March 1986 a line unit representative at State Farm responsible for a preliminary investigation of plaintiffs claim concluded that the Rosatos were 100% liable for the accident. By August 1986, a State Farm claims representative responsible for handling the case on a daily basis was in receipt of medical reports attesting to the severity of plaintiffs injuries. A physical examination of plaintiff conducted by State Farm’s physicians on April 27, 1987 confirmed those findings.
 

 New developments in the case against the Rosatos surfaced on June 9, 1987 — the date that Carmine Rosato was deposed. Through Rosato’s testimony, State Farm was led to believe that the double-parked car may have been backing up, suggesting that Rosato’s quick maneuvering may have been justified under an "emergency defense”; that witnesses not previously identified could support this version of the incident; that Pavia failed to wear a seat belt; and that drugs were being used in the car that night, possibly supporting an assumption of the risk defense. By letter dated June 10, 1987, counsel retained for the Rosatos by State Farm acknowledged that the liability forecast was "extremely unfavorable,” but recommended that a further inquiry be conducted in light of these new leads.
 

 On June 26, 1987, admittedly without having read Rosato’s deposition, plaintiffs counsel wrote to State Farm demanding the full $100,000 policy limit in settlement of the personal injury action and requiring acceptance of the offer within 30 days. The offer expired without response from State Farm. By this time, however, State Farm had embarked on a thorough investigation of the potential defenses illuminated by Rosato’s deposition. In fact, State Farm had hired an investigator to locate the supposed witnesses who would corroborate Rosato’s version of how the events leading to the accident unfolded. By November 1987, State Farm’s efforts to locate those witnesses were abandoned because the search had proved fruitless. On December 1, 1987, State Farm’s Claims Committee, whose
 
 *451
 
 members had the authority to offer payments in excess of $50,000, convened for the first time to discuss the reports generated by the claim representative assigned to the case. On December 16, 1987, the Committee authorized its counsel to offer plaintiff the full policy limits. This offer was conveyed to plaintiff’s attorney by counsel retained by State Farm on the Rosatos’ behalf on January 7, 1988 during a "settle or select” conference, but was rejected as "too late.”
 

 The trial of the underlying personal injury action commenced in March 1988. The jury returned a plaintiff’s verdict in the amount of $6,322,000, attributing 85% of the fault to Carmine Rosato and 15% to codefendant Amerosa. Supreme Court reduced the verdict upon State Farm’s motion to $5,000,000 and the Appellate Division modified that judgment by further reducing the verdict to $3,880,000 upon plaintiff’s stipulation (154 AD2d 519).
 

 The Rosatos subsequently assigned all causes of action they might have against State Farm to plaintiff by executing an assignment agreement, which included a covenant by plaintiff that he would not execute the excess portion of the judgment against the Rosatos. The Rosatos and plaintiff then commenced this action, alleging essentially that State Farm acted in bad faith by "failing] to accept [plaintiff’s] policy limits settlement offer within a reasonable time despite the clear liability and obvious damages exceeding the policy limits.”
 

 At the ensuing trial on the bad-faith action, the jury was presented solely with the following question: "Did the defendant, 'State Farm’, act in gross disregard of the interests of Carmine Rosato and Joanne Rosato, their insured, in that there was a deliberate or reckless decision to disregard the interest of their insured?” The jury answered affirmatively, and Supreme Court entered an "excess” judgment against State Farm in the amount of $4,688,030 — the amount of the jury verdict in the underlying personal injury action as modified by the Appellate Division, less $110,000 already paid by State Farm and Amerosa’s insurer, plus interest and costs.
 

 The Appellate Division affirmed, holding that the trial court properly charged the jury that, in order to find bad faith, State Farm must have acted in "gross disregard” of the Rosatos’ interests, and properly rejected the standard urged by State Farm — that bad faith required "an extraordinary showing of a disingenuous or dishonest failure” to carry out the insurance contract
 
 (see, Gordon v Nationwide Mut. Ins.
 
 
 *452
 

 Co.,
 
 30 NY2d 427, 437,
 
 cert denied
 
 410 US 931). The Court also rejected State Farm’s contention that the evidence adduced at trial was insufficient as a matter of law to present a jury-question on the "bad faith” issue, noting that State Farm "possessed the information necessary to accurately assess both the magnitude of Frank Pavia’s injuries and the Rosatos’ potential exposure well before the June 26, 1987 settlement offer was received”
 
 (Pavia v State Farm Mut. Auto. Ins. Co.,
 
 183 AD2d 189, 199). Despite our conclusion that the courts below properly applied the "gross disregard” standard, as a matter of law the finding of bad faith is not supported by this record.
 

 II.
 

 The notion that an insurer may be held liable for the breach of its duty of "good faith” in defending and settling claims over which it exercises exclusive control on behalf of its insured is an enduring principle, well settled in this State’s jurisprudence
 
 (see, Gordon v Nationwide Mut. Ins. Co.,
 
 30 NY2d 427,
 
 supra; Best Bldg. Co. v Employers’ Liab. Assur. Corp.,
 
 247 NY 451, 453;
 
 Brassil v Maryland Cas. Co.,
 
 210 NY 235, 241). The duty of "good faith” settlement is an implied obligation derived from the insurance contract
 
 (Gordon, supra,
 
 at 436-437). Naturally, whenever an insurer is presented with a settlement offer within policy limits a conflict arises between, on the one hand, the insurer’s interest in minimizing its payments and on the other hand, the insured’s interest in avoiding liability beyond the policy limits
 
 (Brown v United States Fid. & Guar. Co.,
 
 314 F2d 675, 678 [2d Cir] [construing New York law]). By refusing to settle within the policy limits, an insurer risks being charged with bad faith on the premise that it has "advanced its own interests by compromising those of its insured”
 
 (Gordon, supra,
 
 at 446 [Breitel, J., dissenting]), or even those of an excess insurance carrier who "alone [may be] placed at further risk due to the defendant’s intractable opposition to any settlement of the claim”
 
 (St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.,
 
 43 NY2d 977, 978).
 

 At the root of the "bad faith” doctrine is the fact that insurers typically exercise complete control over the settlement and defense of claims against their insureds, and, thus, under established agency principles may fairly be required to act in the insured’s best interests
 
 (see generally,
 
 7C Appleman,
 
 *453
 
 Insurance Law and Practice § 4711 [Berdal ed]). On the other hand, a countervailing policy consideration exists in the courts’ understandable reluctance to expose insurance carriers to liability far beyond the bargained-for policy limits for conduct amounting to a mere mistake in judgment. Thus, established precedent clearly bars a "bad faith” prosecution for conduct amounting to ordinary negligence
 
 (see, Brennan v Mead,
 
 54 NY2d 811,
 
 affg
 
 81 AD2d 821;
 
 Best Bldg., supra,
 
 at 454-456;
 
 Roldan v Allstate Ins. Co.,
 
 149 AD2d 20). Indeed, in
 
 Gordon v Nationwide Mut. Ins. Co. (supra),
 
 this Court held that even where an insurer had withdrawn from its insured’s defense on the erroneous belief that the policy of insurance had lapsed, the error in judgment could not form the predicate for a bad-faith action (30 NY2d, at 431).
 

 Beyond that principle, the courts have had some difficulty selecting a standard for actionable "bad faith” because of the need to balance the insured’s rightful expectation of "good faith” against the insurer’s equally legitimate contract expectations. Consequently, a divergence of authority has arisen concerning whether a bad-faith finding may be predicated on a showing of the insurer’s recklessness or "gross disregard” for the insured’s interests
 
 (see, Dano v Royal Globe Ins. Co.,
 
 59 NY2d 827, 830;
 
 DiBlasi v Aetna Life & Cas. Ins. Co.,
 
 147 AD2d 93; PJI 4:67 [1992 Supp]), or whether a heightened showing of intentionally harmful, dishonest or disingenuous motive is required
 
 (see, Gordon, supra; Crawford v Hospital of Albert Einstein Coll. of Medicine,
 
 159 AD2d 304, 305 [1st Dept];
 
 Kinnarney v Natale Auto Body,
 
 157 AD2d 938, 938 [3d Dept];
 
 Guarantee Ins. Co. v City of Long Beach,
 
 106 AD2d 428, 428-429 [2d Dept]).
 

 Faced squarely with the question for the first time, we reject defendant’s proposed requirement of a "sinister motive” on the part of the insurer
 
 (see, Cappano v Phoenix Assur. Co.,
 
 28 AD2d 639, 640), and hold instead that, in order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer’s conduct constituted a "gross disregard” of the insured’s interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer
 
 (see, Lozier v Auto Owners Ins. Co.,
 
 951 F2d 251 [9th Cir]). In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would
 
 *454
 
 be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted.
 

 The gross disregard standard, which was utilized by the trial court here, strikes a fair balance between two extremes by requiring more than ordinary negligence and less than a showing of dishonest motives. The former would remove the latitude that insurers must be accorded in investigating and resisting unfounded claims, while the latter would be all but impossible to satisfy and would effectively insulate insurance carriers from conduct that, while not motivated by malice, has the potential to severely prejudice the rights of its insured. The intermediate standard accomplishes the two-fold goal of protecting both the insured’s and the insurer’s financial interests.
 

 III.
 

 Having established the proper legal standard, we necessarily shift to the sufficiency of plaintiff’s proof in this case. Naturally, proof that a demand for settlement was made is a prerequisite to a bad-faith action for failure to settle
 
 (United States Fid. & Guar. Co. v Copfer,
 
 48 NY2d 871, 873). However, evidence that a settlement offer was made and not accepted is not dispositive of the insurer’s bad faith. It is settled that an insurer "cannot be compelled to concede liability and settle a questionable claim”
 
 (St. Paul, supra,
 
 at 978) simply "because an opportunity to do so is presented”
 
 (Knobloch v Royal Globe Ins. Co.,
 
 38 NY2d 471, 479). Rather, the plaintiff in a bad-faith action must show that "the insured lost an actual opportunity to settle the * * * claim”
 
 (Copfer, supra,
 
 at 873) at a time when all serious doubts about the insured’s liability were removed
 
 (St. Paul, supra,
 
 at 978;
 
 DiBlasi, supra,
 
 at 98-99).
 

 Bad faith is established only "where the liability is clear and the potential recovery far exceeds the insurance coverage”
 
 (DiBlasi, supra,
 
 at 98). However, it does not follow that whenever an injury is severe and the policy limits are significantly lower than a potential recovery the insurer is obliged to accept a settlement offer. The bad-faith equation must include consideration of all of the facts and circumstances relating to whether the insurer’s investigatory efforts prevented it from making an informed evaluation of the risks of refusing settlement. In making this determination, courts must assess the plaintiff’s likelihood of success on the liability issue in the underlying action, the potential magnitude of
 
 *455
 
 damages and the financial burden each party may be exposed to as a result of a refusal to settle. Additional considerations include the insurer’s failure to properly investigate the claim and any potential defenses thereto, the information available to the insurer at the time the demand for settlement is made, and any other evidence which tends to establish or negate the insurer’s bad faith in refusing to settle. The insured’s fault in delaying or ceasing settlement negotiations by misrepresenting the facts also factors into the analysis
 
 (see, Lozier v Auto Owners Ins. Co.,
 
 951 F2d 251, 254 [9th Cir 1991],
 
 supra; see also,
 
 14 Couch, Insurance 2d § 51:137 [rev ed]).
 

 Application of the aforementioned principles here leads us to the conclusion that plaintiffs have failed to establish a prima facie case of bad faith. Plaintiffs’ allegations of bad faith stem principally from defendant State Farm’s failure to abide by a settlement deadline unilaterally established by plaintiff Pavia’s counsel and its delay in ultimately offering the policy limits in settlement.
 

 However, defendant’s failure to respond to the letter and over-all delay under the circumstances of this case cannot serve as a basis for recovery. Permitting an injured plaintiff’s chosen timetable for settlement to govern the bad-faith inquiry would promote the customary manufacturing of bad-faith claims, especially in cases where an insured of meager means is covered by a policy of insurance which could finance only a fraction of the damages in a serious personal injury case. Indeed, insurers would be bombarded with settlement offers imposing arbitrary deadlines and would be encouraged to prematurely settle their insureds’ claims at the earliest possible opportunity in contravention of their contractual right and obligation of thorough investigation.
 

 Here, plaintiffs time-limited settlement offer came at a relatively early point in the litigation. Moreover, at the time the 30-day settlement demand was made, there remained several significant questions about the insured’s liability, which defendant was entitled to investigate and explore. That defendant could have acted more expeditiously does not convert inattention into a gross disregard for the insured’s rights, particularly where, as here, there is no contention that the insurer failed to carry out an investigation, to evaluate the feasibility of settlement
 
 (cf., Knobloch,
 
 38 NY2d 471, 480,
 
 supra),
 
 or to offer the policy limits before trial after the weakness of the insured’s litigation position was clearly and fully assessed.
 

 
 *456
 
 The facts that State Farm’s preliminary liability forecasts were unfavorable and that the investigation ultimately proved those forecasts accurate certainly do not establish that the insurer was unjustified in engaging in further investigation and failing to effectuate an earlier settlement. On the contrary, State Farm’s failure to conduct the continuing inquiry could have constituted a breach of its obligation to investigate and defend its insured. Moreover, State Farm should not be penalized for the delay in processing the claim and offering the full policy limits in settlement which resulted from its pursuit of an investigation prompted by its insured’s representations which ultimately did not materialize
 
 (see, Brennan v Mead,
 
 81 AD2d 821,
 
 affd
 
 54 NY2d 811,
 
 supra; Pipoli v United States Fid. & Guar. Co.,
 
 38 AD2d 249, 250;
 
 Colbert v Home Indem. Co.,
 
 35 AD2d 326, 329).
 

 By any view of the evidence, State Farm’s failure to promptly respond to the time-restricted demand did not amount to more than ordinary negligence — an insufficient predicate for a bad-faith action. Evident as it may be with hindsight that State Farm should have responded to the settlement offer by at least requesting an extension, its failure to do so was not evidence of willful neglect of the insured’s rights, but instead amounted to mistaken judgment or administrative delay in confirming what it had suspected it would do all along — settle for the policy limits. Thus, this record lacks any pattern or indicia of reckless or conscious disregard for the insured’s rights upon which we could uphold a bad-faith judgment.
 

 We need not address State Farm’s remaining contentions.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order reversed, etc.