OPINION OF THE COURT
Stanley Green, J.
Motion of the defendant Edith Sanders (Sanders) pursuant to CPLR 5015 (d), for restitution of the amount of $577,805.25 plus interest, following the reversal of the judgment entered in this action, pursuant to which her insurance carrier made the payment, is granted, with $100 costs. The plaintiff, Frederick Polipo, and his attorneys, Esterman & Esterman, P. C., are directed to forthwith return to the law firm of O’Brien & Mayr, attorneys for the defendant Edith Sanders, the sum of $577,805.25 plus interest from September 30, 1996, plus $100 costs.
DISCUSSION
A trial of this action was held before Hon. Bernard Burstein and resulted in a jury verdict of $5,908,320. Following denial of postrial motions to increase the ad damnum from $1,000,000 and to set aside the verdict as against the weight of the evidence or as excessive, judgment was entered. Defendants filed a notice of appeal and, significantly, plaintiff filed a notice of cross appeal. Subsequently, following an agreement on the record before Justice Burstein, Hartford Insurance Company (Hartford) paid $577,895.25 to plaintiff’s attorneys and received from the attorneys a partial satisfaction of the judgment.
Following the reversal of the judgment by the Appellate Division and denial of leave to appeal by the Court of Appeals, the attorney for Sanders requested, by letter dated September 25, 1996, that plaintiff and plaintiff’s attorneys refund the moneys paid. When the plaintiff and his attorneys did not do so, Sanders’ attorney applied for an order to show cause and a stay of any further disbursement of funds, which Justice Bur-stein granted. Prior to the return date of the order to show cause, Justice Burstein died, and the matter was transferred to the undersigned.
Plaintiff’s attorney argues that the $577,805.25 was paid pursuant to a "settlement” and that the plaintiff has no obligation to return any of the money.
The May 12, 1995 transcript of the purported "settlement” reveals that the agreement to pay the amount was not *835 to settle plaintiff’s claim, but merely to satisfy Hartford’s obligation to indemnify Sanders, its insured, and to cut off the further running of interest on a part of the judgment, as well as to avoid the necessity for Hartford to post an undertaking to stay enforcement of the judgment pending appeal and having to share in the costs of the appeal. "A compromise and settlement is an agreement or arrangement by which, in consideration of mutual concessions, a controversy is terminated.” "Although a distinction may be made between a compromise and a settlement, the two terms are often used synonymously and interchangeably.” (19 NY Jur 2d, Compromise, Accord, and Release, § 27, at 334-335.)
Plaintiff did not give any consideration for the receipt of the money, except for the partial satisfaction of the judgment; he did not give a release to Sanders nor did he give up any part of his claim. Nor did the payment by Hartford on behalf of its insured terminate any part of plaintiff’s claim. "Payment differs from a compromise and settlement because payment is not a contract but rather the discharge of a contract by the performance of its terms.” (19 NY Jur 2d, Compromise, Accord, and Release, § 28, at 338.) Here there was payment by Hartford to discharge its obligation to its insured and not a compromise of any part of plaintiff’s claim.
"A settlement dictated into the record in unambiguous language and without doubt of circumstance is a valid contract between the parties”. (19 NY Jur 2d, Compromise, Accord, and Release, § 33, at 345.) The language used in the transcript might be unambiguous, but, contrary to plaintiff’s position, it leads only to the conclusion that plaintiff was neither settling his claim nor giving up any rights he possessed at the time the statements were made. "The most distinctive element of a compromise is the subject matter which exists in a dispute or controversy between the parties. The word 'compromise’ imports concessions on the part of both parties to the agreement and implies a means of terminating a dispute or controversy. The object of a compromise, it is said, is to avoid the determination of sharply contested and dubious issues.” (19 NY Jur 2d, Compromise, Accord, and Release, § 30, at 340.) The payment by Hartford pursuant to a judgment did not terminate the dispute between plaintiff and Sanders. Plaintiff did not agree to forego any part of his claim against Sanders. Sanders’ personal attorney stated that Sanders’ assets were at risk in the event plaintiff’s cross appeal resulted in a judgment in excess of the insurance coverage and plaintiff at that time *836 did not agree to forego his right to recover sums in excess of the insurance coverage.
Plaintiff is now in the same position that he would have been had he collected the money from Hartford by executing on the judgment. On May 12, 1995, plaintiff’s attorney stated that Public Service Mutual Insurance Company had filed an undertaking to stay enforcement of the judgment with respect to the excess coverage and further stated, "That leaves five hundred thousand to be executed on pursuant to the judgment”. As further evidence that the agreement by Hartford to partially satisfy the judgment was not a "settlement” is the fact that following Hartford’s agreement to partially satisfy the judgment, Sanders’ attorney moved to resettle the judgment to reduce the amount by the percentage of plaintiff’s culpable fault, 1%, as found by the jury. If Hartford had been released, it would have no concern regarding this, since it would not have reduced the amount of the judgment below Hartford’s coverage.
The benefits which Hartford received by paying the limits of its coverage had no detrimental effect on plaintiff. Plaintiff’s argument that Hartford was not an appealing party is of no significance. Hartford was not a party to the action and had no right to appeal. The fact that Hartford’s attorney sent a letter to the excess carrier in which Hartford did not expressly reserve its right to reclaim the money if the matter were reversed on appeal is of no moment. The statutes, CPLR 5015 (d) and CPLR 5523, give Hartford the right to restitution in this case. "At the usual point of a CPLR 5015 vacatur motion, the judgment has not yet been satisfied and nothing has changed hands. If something has, however, such as by levy of execution or some other enforcement device, or for that matter even by voluntary means, and the payment or delivery was based entirely on the judgment or order, the vacatur or modification of the judgment or order can be accompanied by a judicial direction for restitution.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5015:14, at 480-481 [emphasis supplied].)
Although plaintiff asserts that the "settlement” allowed Hartford to avoid the risk of a bad-faith action in the event the ad damnum was increased as a result of plaintiff’s cross appeal, the court finds that even if this assertion is correct, it is of no avail to plaintiff. "It is well established that an insurer who refuses a settlement offer in bad faith may be held liable in damages to its insured (e.g., Gordon v Nationwide Mut. Ins. *837 Co., 30 NY2d 427; Best Bldg. Co. v Employers’ Liab. Assur. Corp., 247 NY 451, 453).” (Soto v State Farm Ins. Co., 83 NY2d 718, 723 [emphasis supplied].) While plaintiff might have taken an assignment of Sanders’ right to sue her insurance company for bad-faith refusal to settle the action (see, Pavia v State Farm Ins. Co., 82 NY2d 445, 451), he did not do so here, and with hindsight, in view of the outcome in the Appellate Division, the lack of bad faith on the part of Hartford as well as on the part of Public Service Mutual is conclusively established. That partial satisfaction of the judgment by Hartford may have prevented it from being subject to a claim of bad faith by Sanders is not consideration from plaintiff.
plaintiff’s equitable arguments
Plaintiff’s arguments that he has changed his lifestyle as a result of the receipt of funds on behalf of Sanders and that requiring him to return the money will force him into bankruptcy have no bearing on Hartford’s right to restitution. In view of the Appellate Division’s determination that plaintiff failed to prove negligence on the part of Sanders, his retention of the money would constitute unjust enrichment. It was not Hartford’s payment of a substantial amount of money on behalf of its insured which left plaintiff unable to work, but rather the injuries he suffered when he slipped and fell in his apartment.