**Marie Myrtha MIRVILLE, Plaintiff/Judgment Creditor,**

v.

**ALLSTATE INDEMNITY COMPANY, Garnishee.**

**Peterson Mirville, Next Friend for Eclamene Mesca, a Minor, Plaintiff/Judgment Creditor,**

v.

**Allstate Indemnity Company, Garnishee.**

**Nos. 97–4211–DES, 97–4213–DES.**

United States District Court, D. Kansas.

Feb. 4, 2000.

---

Jerry R. Palmer, Palmer, Lowry, Leatherman & White, L.L.P., Topeka, KS, for Marie Myrtha Mirville.

Patrick E. McGrath, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Joseph A Mirville.

Richard F. Modin, Dougherty, Modin & Holloway, Kansas City, MO, Daniel R. De-Foe, Blue Springs, MO, William J Lewis, Lewis, Johs, Avallone, Aviles & Kaufman,

Melville, NY, for Allstate Indemnity Company.

Patrick B. Hughes, Adams & Jones, Chartered, Wichita, KS, Donald W. Bostwick, Wichita, KS, for Computer Sciences Corporation.

Kirk W. Lowry, Palmer, Lowry, Leatherman & White, L.L.P., Topeka, KS, for Peterson Mirville.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

The court conducted a bench trial in this case from December 1, 1999, to December 3, 1999. Prior to trial, the parties submitted proposed findings of fact and law. The court has examined the evidence submitted at trial and considered the proposed findings submitted by the parties. The court is now ready to rule.

### I. FINDINGS OF FACT

Based upon the factual stipulations of the parties in the pre-trial order and the evidence presented at trial, the court makes the following findings of fact in regard to this case:

1. On July 9, 1996, a two-car automobile accident occurred on the Kansas Turnpike in Shawnee County, Kansas. Both cars were traveling in the same direction at the time of the accident.

2. The front car in the collision was owned and driven by Joseph Mirville, the front seat passenger was Marie Myrtha Mirville, and the backseat passenger was Eclamene Mesca.

3. The back car in the collision was owned and driven by Pamela Sargent. The passengers in her car were her two minor children, Jeremy Willis and Jennifer Sargent.

4. Joseph Mirville and the vehicle he was driving were insured by Allstate Indemnity Company ("Allstate").

5. Allstate's insurance policy provided a $25,000 per person limit for bodily injury liability claims and a $50,000 per occurrence limit for bodily injury liability claims.

6. On August 19, 1996, Marie Mirville and Eclamene Mesca made an offer to take $25,000 each for their injuries in exchange for a release of liability to Joseph Mirville. This offer was forwarded to a person in the no-fault division of the Allstate Market Claims office in Brooklyn, New York. The no-fault division and the liability division are on the same floor of the office building.

7. On September 4, 1996, the August 19th letter and supporting documentation was faxed and mailed to Linda Cunningham, the Allstate claim representative who handled the file. This letter did not contain any time limit on the offer.

8. On September 5, 1996, Linda Cunningham did an initial evaluation of Marie Mirville's claim and determined that it had a settlement value of $170,000 to $200,000. She then used the Colossus computer program to evaluate the claim. The Colossus program indicated that Marie Mirville's general damages were in the range of $1,076,720 to $1,345,900 and recommended a settlement range of $942,130 to $1,211,310.

9. On September 5, 1996, Linda Cunningham also did an initial evaluation of Eclamene Mesca's claim and estimated the settlement range to be $150,000 to $175,000. The Colossus program indicated that Eclamene Mesca had general damages in the range of $148,000 to $185,000 and recommended a settlement range of $129,000 to $167,000.

10. By September 5, 1996, Linda Cunningham was aware that (1) Joseph Mirville was probably liable to Marie Mirville and Eclamene Mesca; (2) Joseph Mirville's percentage of fault might be as high as 90 percent; and (3) that Marie Mirville and Eclamene Mesca each had a claim for past medical expenses that alone would have exceeded the coverage available to any one person.

11. On October 4, 1996, plaintiffs' counsel wrote to Linda Cunningham and enclosed the petitions that had been filed on behalf of Marie Mirville and Eclamene Mesca against Joseph Mirville.

12. On October 17, 1996, Gary White, who was the attorney for Pamela Sargent, sent a letter to Linda Cunningham making a demand for Mr. Mirville's policy limits of $25,000. Mr. White also outlined his theory of the accident, sent itemized medical bills, described Pamela Sargent's medical condition and claimed total damages over $260,000.

13. On October 22, 1996, Pat McGrath, who was hired by Allstate to represent Joseph Mirville, recommended that Allstate "put up its policy limits." McGrath also told Allstate that they were "being set up for bad faith."

14. Linda Cunningham did not want to settle any of the claims until she had information from the claimants in the Sargent vehicle regarding their injuries and their medical bills.

15. On October 28, 1996, Marie Mirville and Eclamene Mesca withdrew their offers to settle for $25,000 each.

16. On November 8, 1996, Linda Cunningham advised Pat McGrath to offer the $50,000 policy limits to all five claimants—Marie Mirville, Eclamene Mesca, Pamela Sargent, Jeremy Sargent and Jennifer Sargent.

17. On November 12, 1996, Allstate's evaluator/consultant John Hartney formally recorded authority for the $50,000 settlement offer. John Hartney authorized the following values for each of the five claimants:

| | |
|---|---|
| Marie Mirville: | $10,000 |
| Eclamene Mesca: | $10,000 |
| Pamela Sargent: | $16,710 |
| Jeremy Sargent: | $ 3,290 |
| Jennifer Sargent: | $10,000 |

According to the testimony of Linda Cunningham, the amounts authorized by John Hartney were intended to total $50,000, which would provide authorization to offer $50,000 to all claimants, and that the individual amounts assigned to each claimant were never disclosed to anyone outside of Allstate and were not intended to represent actual settlement offers to any of claimants individually.

18. On February 3, 1997, Pat McGrath offered the $50,000 policy limits in writing to all five claimants.

19. On March 3, 1997, Linda Cunningham again offered $50,000 in writing to all five claimants.

20. On May 7, 1997, Richard Modine, who was the attorney for Allstate, offered the $50,000 to all five claimants without a specification of a single offer to any individual claimant.

21. Linda Cunningham believed that the offer of $50,000 would be accepted by all of the claimants based upon her experience in dealing with this type of claim in New York.

22. The offer to settle with all the claimants for a collective $50,000 was rejected by the plaintiffs.

23. On July 1, 1997, Pamela Sargent, Jeremy Sargent and Jennifer Sargent ("the Sargents") accepted the $50,000 offer to settle.

24. The acceptance by the Sargents was made collectively and the money was apportioned as follows:

| | |
|---|---|
| Jeremy Sargent | $ 5,000 |
| Jennifer Sargent | $22,500 |
| Pamela Sargent | $22,500 |

25. On September 8, 1997, Allstate wrote Joseph Mirville and advised him that he would jeopardize the defense of his case and his rights under his insurance policy if he entered into an agreement to confess judgment.

26. On October 8, 1997, the District Court of Shawnee County, Kansas held a hearing and entered a confessed judgment in favor of Marie Mirville and Eclamene Mesca in their respective cases. In exchange for a covenant not to execute against him personally, Joseph Mirville assigned his rights to sue Allstate for bad faith

to Marie Mirville and Eclamene Mesca.

27. Based upon the assignment of rights, Marie Mirville and Eclamene Mesca filed suit as judgment creditors against Allstate claiming that Allstate acted in bad faith toward Joseph Mirville by failing to settle the claims they had against him within the policy limits.

Additional facts will be incorporated below, when needed.

## II. CONCLUSIONS OF LAW

■ On September 21, 1999, the court issued a Memorandum and Order which held that the law of the state of New York would cover all of the substantive issues in this case. When an insurance company fails to settle within its policy limits, it risks being charged with bad faith "on the premise that it has 'advanced its own interests by compromising those of its insured.'" *Pavia v. State Farm Mut. Auto. Ins. Co.* 82 N.Y.2d 445, 605 N.Y.S.2d 208, 626 N.E.2d 24, 27 (1993) (quoting *Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d 849, 860 (1972) (Breitel, J., dissenting)). Pursuant to New York law,

> in order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a "gross disregard" of the insured's interest—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer. In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted.

*Pavia v. State Farm Mut. Auto. Ins. Co.* 82 N.Y.2d 445, 605 N.Y.S.2d 208, 626 N.E.2d 24, 27–28 (1993). "The gross disregard standard ... strikes a fair balance between two extremes by requiring more than ordinary negligence and less than a showing of dishonest motives." *Id.* 626 N.E.2d at 28.

## III. DISCUSSION

### A. Allstate's Handling of the Case

The court finds that there are two relevant time periods which are important in this case. The issue before the court, as a finder of fact, is whether Allstate acted in bad faith in failing to settle the claims of Marie Mirville and Eclamene Mesca within Joseph Mirville's policy limits. The evidence presented at trial showed that an offer of settlement by Marie Mirville and Eclamene Mesca for the policy limits was open from August 19, 1996, to October 28, 1996. On October 28, 1996, the offers were withdrawn by Jerry Palmer, who is the attorney for Marie Mirville and Eclamene Mesca. The court finds that the case should be analyzed by looking at the actions taken by Allstate during the time when the offers were open and the actions taken by Allstate after the offers to settle had been withdrawn.

### 1. The Bad Faith Claim Before October 28, 1996

■ The accident which gave rise to this cause of action took place on July 9, 1996. In that accident, five people were injured, including Marie Mirville, Eclamene Mesca, and the three people in the Sargent vehicle. On August 19, 1996, Mr. Palmer wrote Ron Williams a letter wherein he demanded the policy limits for his clients Marie Mirville and Eclamene Mesca. That demand was also made to Linda Cunningham on September 4, 1996. Linda Cunningham testified that she did not want to settle any of the claims in the case until she was able to examine all of the claims. At the time Mr. Palmer made the demand on behalf of the plaintiffs, which would have completely exhausted the policy coverage, Linda Cunningham did not have any information concerning the injuries to the Sargents. On October 17, 1996, Gary White wrote a letter to Linda Cunningham on behalf of his client Pamela

Sargent also demanding $25,000 under Joseph Mirville's insurance policy.

The court finds that Allstate did not commit bad faith when dealing with Joseph Mirville prior to October 28, 1996. There was no evidence presented at trial which showed that Allstate was attempting to place its own interests above those of it's insured. Allstate recognized from the very beginning that it would be forced to pay its $50,000 policy limit. It is clear to the court that Allstate's actions were focused on trying to settle all potential claims against Joseph Mirville within the policy limits. Failing to act upon the policy limit demands from Marie Mirville and Eclamene Mesca, within the time limit they unilaterally imposed, did not amount to bad faith under New York law and the facts of this case. This is especially true considering the fact that accepting these claims would have exposed Joseph Mirville to monetary judgment claims from the three Sargents.

The *Pavia* decision is also persuasive to the court in determining that no bad faith occurred by Allstate's failure to accept the offers prior to October 28, 1996. In *Pavia*, the court stated:

> Permitting an injured plaintiff's chosen timetable for settlement to govern the bad-faith inquiry would promote the customary manufacturing of bad-faith claims, especially in cases where an insured of meager means is covered by a policy of insurance which could finance only a fraction of the damages in a serious personal injury case. Indeed, insurers would be bombarded with settlement offers imposing arbitrary deadlines and would be encouraged to prematurely settle their insureds' claims at the earliest possible opportunity in contravention of their contractual right and obligation of thorough investigation.

*Pavia*, 605 N.Y.S.2d 208, 626 N.E.2d at 28–29. This case presents precisely the type of claims which the *Pavia* court was attempting to limit.

Pat McGrath testified at trial that he believed very early on that Allstate was "being set up for bad faith." In fact, he even indicated so in a letter he sent to Allstate. When questioned about this statement, Mr. McGrath stated that this belief came from the fact that the plaintiffs' claims were so far in excess of the policy limits that the $25,000 per person could in no way adequately recompense the plaintiffs for their injuries. He stated that he believed that the plaintiffs would best be served by obtaining a consent judgment against Joseph Mirville in exchange for a covenant not to execute and an assignment of rights to sue Allstate for bad faith. This would allow the plaintiffs to attempt to obtain compensation from Allstate rather than Joseph Mirville, who was the husband of Marie Mirville and the uncle of Eclamene Mesca. Although the court understands the reasoning behind this strategy, Allstate will not be held liable for bad faith as a result of it.

### 2. The Bad Faith Claim After October 28, 1996

The offers by Marie Mirville and Eclamene Mesca were officially withdrawn by their attorney, Mr. Palmer, on October 28, 1996. In that letter, Mr. Palmer stated, "We do not intend to make these offers again." The uncontroverted evidence at trial was that the opportunity to settle the claims for the policy limits had passed and that no settlement for $25,000 each would be made or accepted by Marie Mirville or Eclamene Mesca again. In fact, Mr. McGrath testified that he believed Mr. Palmer was setting up Allstate for a bad faith claim from the very beginning because the $25,000 per person coverage was totally inadequate to compensate his clients for their injuries. Because the uncontroverted evidence at trial showed that any attempt to settle the claims with Marie Mirville and Eclamene Mesca for the policy limits after October 28, 1996, would have been futile, the court finds that Joseph Mirville could not have been injured by any actions of Allstate in failing to attempt to settle these claims.

The court finds it somewhat incredulous for the plaintiffs to be making a claim for damages based upon actions taken by Allstate after October 28, 1996. This claim is based upon Allstate's failure to attempt to settle a claim for an amount in which the plaintiffs stated, through their attorney, they had no intention of accepting after that date. Clearly, a plaintiff who brings a bad faith failure to settle claim against an insurance company must show that but for the insurance company's actions, the case could have settled within the policy limits or for an amount in excess of the policy limits wherein the insured agreed to contribute any excess amount. In fact, the New York pattern jury instructions provide that the cause of action is based on the fact that the **"defendant had the opportunity to settle** [it's insured's] claim [either prior to or after] judgment...." NYPJI 4:67 (emphasis added). The uncontroverted evidence shows that such was not the case in this matter after October 28, 1996. There is simply no evidence that the case could have been settled within the policy limits after that date, nor is there any evidence that Joseph Mirville had agreed to contribute to a settlement amount wherein he would pay any excess amount. Therefore, the court finds that any actions taken by Allstate in regard to settling the claims by Marie Mirville and Eclamene Mesca after October 28, 1996, do not support an award for damages in favor of the plaintiffs on their bad faith claim against Allstate.

### B. Other Evidence Presented by the Plaintiffs

Although the court has found that the plaintiffs have not produced sufficient evidence to support a claim for bad faith against Allstate, the court would like to address certain areas of evidence which were relied upon heavily by the plaintiffs in their case. These areas include the evidence regarding Allstate's handling of Marie Mirville's no-fault claims, the evidence regarding the handling of the claims by outside counsel Pat McGrath, and the settlement of the Sargent claims.

### 1. Evidence Regarding the No–Fault Claims

██] During trial, the plaintiffs presented evidence concerning the handling of the no-fault claims filed by Marie Mirville with Allstate. Although not directly at issue in this case, Allstate was apparently obligated to provide no-fault coverage to Marie Mirville under Joseph Mirville's insurance policy to cover her medical expenses and lost earnings. The plaintiffs introduced evidence as an effort to show "a pattern of bad faith" toward Marie Mirville. These claims were handled by different personnel in a different department from the liability claim which was at issue in this case. How individuals in the no-fault department of Allstate handled the no-fault claims of Marie Mirville are irrelevant when determining whether Allstate acted in bad faith toward Joseph Mirville in failing to settle Marie Mirville's claim against him. The bad faith claim was brought by Marie Mirville and Eclamene Mesca on behalf of Joseph Mirville based on an assignment of rights. The cause of action is, therefore, based upon the actions taken by Allstate toward Joseph Mirville's interests. There was no evidence presented which showed that the alleged improper handling of the no-fault coverage had any negative impact on directly on Joseph Mirville. Therefore, this evidence has no bearing on this case.

### 2. Evidence Regarding the Handling of the Claim by Outside Counsel

██ The plaintiffs went to great lengths to show what was done, and more importantly not done, by Pat McGrath in his defense of Joseph Mirville's case. The plaintiffs argued that neither Allstate nor Pat McGrath ever (1) secured any medical records of any claimant by the use of authorization or subpoena prior to the time that Allstate had committed all of its coverage to the payment of the Sargents' claims which exhausted coverage under the policy; (2) secured by request any prior medical records of any claimant; (3) interviewed the investigating officer; (4)

attempted to obtain the photographs of the scene of the accident until after the agreement to settle with Sargents; (5) retained an accident reconstructionist or anyone else to help analyze the facts of the accident to attempt to find proof to reduce Mr. Mirville's percentage of fault; (6) attempted to obtain an independent medical examination of any claimant prior to the settlement of the Sargents' claims; or (7) obtained the ticket or the court records of transaction of the payment of the ticket issued to Joseph Mirville. The plaintiffs also presented evidence concerning a cost control program which was in effect for all Allstate case handled by the law firm for whom Pat McGrath worked. This policy limited the amount of hours Mr. McGrath was able to bill for certain tasks and required prior approval for certain tasks such as depositions, independent medical examinations and legal research.

Pat McGrath was questioned at length about his handling of the case. He stated that it was his understanding very early in this case that Marie Mirville and Eclamene Mesca would be seeking a consent judgment and an assignment of rights to sue Allstate for bad faith in exchange for a covenant not to execute against Joseph Mirville. Mr. McGrath testified that it was for this reason that he did not undertake the investigation which would have been necessary to prepare the case for trial. However, even if some or all of the investigative techniques listed above should have been performed, that responsibility would have fallen on Mr. McGrath, not Allstate. Once Allstate hired Mr. McGrath to handle the case, it was only reasonable for them to place the responsibility of investigating and preparing the defense on the retained outside attorney. If Joseph Mirville feels as though the failure to investigate this case properly in some way damaged him, it seems as though the proper course of action would be to file suit against Mr. McGrath for legal malpractice rather than Allstate for bad faith.

Mr. McGrath also testified that the cost control program played no part in his han-

dling of Joseph Mirville's defense. He stated that the limitations imposed by the program are not enforced by Allstate. In fact, evidence was presented at trial which showed that tasks such as legal research were performed without prior approval and were paid for by Allstate. It does not appear that the cost control program instituted by Allstate had any negative effects on the handling of Joseph Mirville's defense.

### 3. Settlement of the Sargents' Claims

■ The plaintiffs also presented a large amount of evidence at trial concerning the amount of money which was given to settle the claims brought by the Sargents. The plaintiffs' evidence was used to show that the amount of money given to Jeremy Sargent and Jennifer Sargent was approximately double the amount of money which the Colossus program indicated their claims would be worth. The plaintiffs claim that Allstate's actions in paying the two Sargent children larger settlements than its computer program indicated shows bad faith on the part of Allstate toward the Mirvilles.

Taken on its face, the plaintiffs' argument concerning the settlements with the two Sargent children appears valid. However, when the settlement is looked at more closely, the evidence becomes much less persuasive. Although it is true that Allstate settled with Jeremy and Jennifer Sargent for an apparent excess amount of money, it is also true that their mother, Pamela Sargent, settled her claim for approximately $40,000 less than the low end of Allstate's computer analysis. It is very clear to the court that the Sargents, as a whole, agreed to settle for the $50,000 policy limits. Given the extent of Pamela Sargent's claims, this settlement was within Joseph Mirville's best interest, even if it may not appear so when looking at each of the individual settlement amounts.

**1192**

## IV. CONCLUSION

The court finds that the plaintiffs have failed to establish that Allstate acted in bad faith in failing to settle this claim for the limits of Joseph Mirville's insurance policy. As noted above, once Marie Mirville and Eclamene Mesca withdrew their settlement offers on October 28, 1996, it was clear that Allstate would have no opportunity to settle the claims within the policy limits. Therefore, any actions taken by Allstate after that date will not support a finding of bad faith. In addition, the court finds that Allstate was not acting in bad faith by failing to accept the settlement offers before they were withdrawn by the plaintiffs.

Allstate realized from very early on in this case that Joseph Mirville's $50,000 policy limit would be exhausted. However, rather than jumping into a settlement with Marie Mirville and Eclamene Mesca, which would have exhausted the policy limits and exposed its insured to judgments from the Sargents, Allstate attempted to investigate the matter and tried to obtain a settlement with all five of the claimants for the $50,000 policy limit. Clearly, this would have been the best possible situation for Joseph Mirville. Although Allstate may have acted negligently, which was not an issue before the court and will not be decided, the plaintiffs have failed to show that Allstate acted in bad faith as that cause of action is defined under New York law. Therefore, judgment will be entered in favor of Allstate.

**IT IS THEREFORE BY THE COURT ORDERED** that judgment be entered in favor of the garnishee Allstate Indemnity Company and against the plaintiffs Marie Myrtha Mirville and Eclamene Mesca.