**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 21 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

MARIE MYRTHA MIRVILLE; PETERSON
MIRVILLE, next friend and guardian of
ECLAMENE MESCA, a minor,

     Plaintiffs-Appellants,

v.

JOSEPH A. MIRVILLE,

     Defendant,

--------------------

ALLSTATE INDEMNITY COMPANY,

     Garnishee-Appellee.

No. 00-3050
(D. Kan.)
(D.Ct. No. 97-CV-4211)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **ANDERSON**, and **EBEL**, Circuit Judges.

_____

    Plaintiffs Marie Myrtha Mirville and Eclamene Mesca brought this non-

wage garnishment action alleging garnishee Allstate Indemnity Company

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

("Allstate") refused in bad faith and negligently to settle their personal injury claims against Allstate's insured. Utilizing Kansas's choice of law rules, the district court held New York, rather than Kansas, law provided the standard regarding an insurer's duty to defend and settle claims against its insured. *See Mirville v. Allstate Indem. Co.*, 71 F. Supp. 2d 1103, 1108 (D. Kan. 1999) (granting summary judgment in part for Allstate). Plaintiffs appeal this holding and the application of New York law in the subsequent bench trial, after which the district court entered a final order in favor of Allstate. *See Mirville v. Allstate Indem. Co.*, 87 F. Supp. 2d 1184 (D. Kan. 2000). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I. Background

The facts necessary to resolve this appeal are undisputed:

This case arises from an automobile accident which occurred near Topeka, Kansas, on July 9, 1996. Joseph Mirville was driving a car on Interstate 70 which was struck from behind after he stopped in a lane of traffic. The two passengers in the Joseph Mirville car, plaintiffs Marie Mirville and Eclamene Mesca,[1] were both injured in the accident. Joseph Mirville was a resident [and citizen] of New York prior to, and at the time of, this accident. Joseph Mirville was insured by the garnishee in this case, Allstate Indemnity Company .... The insurance contract was entered into in New York.

_____

[1] Marie Mirville is Mr. Mirville's wife and Eclamene Mesca is his niece.

The plaintiffs filed separate suits in the Shawnee County District Court against Joseph Mirville for damages resulting from the accident. Joseph Mirville settled the suits by consenting to judgments in the amount of $2,500,000 in favor of Marie Mirville and $320,000 in favor of Eclamene Mesca. Joseph Mirville also agreed to assign his right to sue Allstate for negligently handling his claim and for acting in bad faith in not settling the claims within his policy limits. In return, the plaintiffs agreed not to execute on the judgments against [Joseph Mirville] personally. The plaintiffs then initiated non-wage garnishment actions against Allstate.

*Mirville*, 71 F. Supp. 2d at 1105. Those actions were removed to the district court on the basis of diversity jurisdiction and consolidated. *See id.* at 1105, 1107. Allstate is an Illinois corporation.

II. Procedural History

In its summary judgment motion, Allstate raised the issue whether New York or Kansas law provided the standard regarding an insurer's duty to defend and settle the personal injury claims brought by plaintiffs against Mr. Mirville. *See id.* at 1106-08. As the district court noted, both New York and Kansas recognize a cause of action against an insurer for an alleged bad faith failure to settle a claim against its insured within policy limits. *See id.* at 1106; *see also Pavia v. State Farm Mut. Auto. Ins. Co.*, 626 N.E.2d 24, 26-27 (N.Y. 1993); *Bollinger v. Nuss*, 449 P.2d 502, 507-08 (Kan. 1969). [2] However, Kansas law

_____

[2] It is important to note this cause of action is one by the insured against the insurer arising out of their contractual relationship. *See Pavia*, 626 N.E.2d at 26-27;

-3-

provides for ordinary negligence as an alternative basis of liability in such an action, while New York law does not.     *Compare  Bollinger* , 449 P.2d at 507-08, *with Pavia*, 626 N.E.2d at 27-28.

The district court applied Kansas's choice of law rules to resolve this conflict of laws.  *See Mirville*, 71 F. Supp. 2d at 1107-08.  The court noted New York law would govern under Kansas's *lex loci contractus* rule (the law of the state where the contract is made controls), unless application of New York law would violate the settled public policy of Kansas (the "public policy exception"). *See id.* at 1107.  After reviewing Kansas Supreme Court case law and the facts in this case, the district court concluded Kansas's public policy exception did not apply.  *See id.* at 1107-08.  Accordingly, based on its decision that New York law governed the substantive issues in this case, the district court granted summary judgment for Allstate as to plaintiffs' negligence claims.  *See id.* at 1108-09.

---

*Glenn v. Fleming*, 799 P.2d 79, 90 (Kan. 1990).  The theory is an insured should not be responsible for any judgment in excess of the insurance policy limits if the insurer acted in bad faith in refusing a settlement offer within those limits.  *See Pavia*, 626 N.E.2d at 26-27; *Bollinger*, 449 P.2d at 508.  Although this claim can be brought by a third party as a garnishment action under an assignment of rights and covenant not to execute, this does not expand the cause of action beyond the relationship between the insured and the insurer.  *See Pavia*, 626 N.E.2d at 26-29; *Glenn*, 799 P.2d at 90-93.  Accordingly, the place of residency and citizenship of plaintiffs as third parties are immaterial to this case.

At the subsequent bench trial on plaintiffs' bad faith claims, the district

court held:

> Although Allstate may have acted negligently, which was not an
> issue before the court and will not be decided, the plaintiffs have
> failed to show that Allstate acted in bad faith as that cause of action
> is defined under New York law.  Therefore, judgment will be entered
> in favor of Allstate.

*Mirville*, 87 F. Supp. 2d at 1192.

On appeal, plaintiffs claim the district court erred in not applying Kansas's

public policy exception to the *lex loci contractus* rule.[3]  In other words, plaintiffs

argue Kansas, not New York, law should apply to this case.

III.  Standard of Review

We review the grant of summary judgment de novo utilizing the standard

described in Rule 56(c) of the Federal Rules of Civil Procedure.  *See Adler v.*

---

[3] In the district court, the parties agreed this is a contract interpretation case invoking the *lex loci contractus* rule, which is how we will evaluate the issue on appeal. *See Mirville*, 71 F. Supp. 2d at 1107.  Plaintiffs raise, for the first time on appeal, an alternative argument that the duty to defend and settle is a contract performance issue. They claim Kansas applies the place of performance rule, as opposed to *lex loci contractus*, to such issues.  However, they have "not attempted to articulate a reason for us to depart from the general rule that 'a federal appellate court does not consider an issue not passed upon below.'"  *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).  Therefore, we decline to consider their alternative argument.  *See id.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  When there is no genuine issue of material fact, we must determine whether the district court correctly applied the substantive law.  *See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

IV.  Discussion

In a diversity of citizenship case, the district court must apply forum state law including its choice of law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In Kansas, an action alleging an insurer breached the duty to settle arises under contract law.  *See Glenn*, 799 P.2d at 90.  Kansas follows the *lex loci contractus* rule when there is a conflict of laws dealing with the interpretation of an insurance contract, which means "the law of the state where the insurance contract is made controls."  *Safeco Ins. Co. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997); *see supra* note 3.  As an exception to the *lex loci contractus* rule, Kansas will not apply another state's law if it violates the settled public policy of Kansas.  *See id.*; *Barbour v. Campbell*, 168 P. 879, 880 (Kan. 1917) ([W]here the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will

not be entertained.).

In this case, we must determine whether the application of New York law violates the settled public policy of Kansas. To resolve this issue, we must identify: (1) the conflict of laws between New York and Kansas, and (2) the settled public policy of Kansas applicable to this type of case.

A. Conflict of Laws Between New York and Kansas

As the district court noted, both New York and Kansas recognize a bad faith cause of action against an insurer for failure to settle a claim against its insured within the policy limits. *See supra* Part II. Both states define "bad faith" as a failure by the insurer to take the insured's interests into equal consideration with its own. *See Pavia*, 626 N.E.2d at 27 ("[I]n order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests – that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer"); *Bollinger*, 449 P.2d at 511 ("[W]e are inclined to the view that the insurer may properly give consideration to its own interests, but it must also give at least equal consideration to the interests of the insured ... 'and if it fails so to do it acts in bad faith.'" (quoting *American Fid. &*

*Cas. Co. v. G.A. Nichols Co.*, 173 F.2d 830, 832 (10th Cir. 1949)).[4]

However, New York does not permit ordinary negligence to be a basis for liability, while Kansas does. *Compare Pavia*, 626 N.E.2d at 27 ("[E]stablished precedent clearly bars a 'bad faith' prosecution for conduct amounting to ordinary negligence."), *with Bollinger*, 449 P.2d at 508 ("[L]iability may be imposed against the insurer on either theory. In other words, the insurer, in defending and settling claims against its insured, owes to the insured the duty not only to act in good faith but also to act without negligence."). Thus, New York's refusal to include ordinary negligence as a basis for an insurer's liability under this cause of action represents the conflict of laws in this case.

---

[4] To the extent plaintiffs argue the bad faith standards of New York and Kansas differ, we disagree. Although the Kansas Supreme Court has not explicitly said so, we believe its explanation of what does not constitute bad faith mirrors New York's "deliberate or reckless" requirement with regards to the insurer's alleged failure to take the insured's interests into equal consideration with its own:

> Where the insurance company acts honestly and in good faith upon adequate information, it should not be held liable because it failed to prophesy the result. Something more than mere error of judgment is necessary to constitute bad faith. The company cannot be required to predict with exactitude the results of a trial; nor does the company act in bad faith where it honestly believes, and has cause to believe, that any probable liability will be less than policy limits.

*Bollinger*, 449 P.2d at 514 (citations omitted).

B.  Settled Public Policy of Kansas

Next, we must identify the settled public policy of Kansas applicable to this case.  Plaintiffs claim the "well settled and strong Kansas public policy" at issue is protecting the insured's interests in light of his relinquishment of the right to conduct his own defense and settlement negotiations, encouraging settlements, and protecting Kansas courts from unnecessary litigation.  We agree the Kansas Supreme Court has declared the public policy objectives in this type of case to be these three considerations.  *See Bollinger*, 449 P.2d at 508; *see also Glenn*, 799 P.2d at 93.[5]  However, we also believe the supreme court has made clear Kansas public policy is not the bad faith or negligence standards themselves; rather, the standards are merely the method of accomplishing the public policy objectives. *See Bollinger*, 449 P.2d at 508 ("Public policy dictates that the insured's interests be adequately protected, and we believe this may be best accomplished by holding that both due care and good faith are required of the insurer in reaching the decision not to settle.").

---

[5]  To the extent the Kansas Supreme Court distinguishes between "settled" and non-settled public policy, we assume without deciding these considerations reflect the "settled" public policy of Kansas. *Cf. Riddle v. Wal-Mart Stores, Inc.*, 998 P.2d 114, 119 (Kan. Ct. App. 2000) ("Before courts are justified in declaring the existence of public policy, 'it should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt.'") (quoting *Palmer v. Brown*, 752 P.2d 685, 687-88 (Kan. 1988)).

C. Evaluation of Conflict of Laws Against Kansas's Settled Public Policy

We turn to an evaluation whether New York's refusal to hold an insurer liable for ordinary negligence under this cause of action violates the settled public policy of Kansas as described above. At oral argument, plaintiffs' counsel stated there was no Kansas case directly on point, and we have found none. Thus, we utilize general principles applicable to, and an analysis of Kansas Supreme Court case law dealing with, the Kansas public policy exception for our evaluation of this issue.

In general, application of the public policy exception should be extremely limited so as to prevent it from consuming the rule. *See Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1223-24 (10th Cir. 1991) (addressing the Kansas public policy exception and emphasizing it has a "narrow scope of application"). "Since every law is an expression of the public policy of the state, some higher threshold is needed to prevent the forum's law from being applied in every case." *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 218 (10th Cir. 1992). As plaintiffs acknowledge, a mere difference in the law of each state is not sufficient to justify the application of the exception. *See Alexander*, 952 F.2d at 1223-24; *cf. Safeco*, 941 P.2d at 1368-69, 1372-73.

The Kansas Supreme Court has invoked Kansas's public policy exception when application of the other state's law would thwart or defeat the public policy objectives underlying the Kansas law at issue. *See St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 777 P.2d 1259, 1269 (Kan. 1989); *Barbour*, 168 P. at 880. In *St. Paul*, several liability insurance companies brought a declaratory judgment action to resolve whether they were obligated to indemnify their insured for an adverse punitive damages award in a products liability case. *See St. Paul*, 777 P.2d at 1261. The punitive damages award was rendered against Playtex, the insured, for the death of a Kansas citizen who had used its product. *See id.* at 1261, 1269. Delaware, Playtex's state of incorporation, allows insurance for punitive damages, while Kansas does not. *See id.* at 1267, 1269. The Kansas Supreme Court declared the objective behind the Kansas law "is to prevent wrongful acts against citizens of the State of Kansas" through deterrence by making "the culprit feel the pecuniary punch, not his guiltless guarantor." *St. Paul*, 777 P.2d at 1269 (quotation marks omitted). Accordingly, the supreme court affirmed the trial court's use of the public policy exception to defeat the application of Delaware law, because refusal to apply the Kansas law "would thwart the purposes for which the policy was adopted." *Id.* at 1269, 1270.

In *Barbour*, an oral contract was allegedly made in Idaho, which, according to the plaintiff, was not prohibited by the Idaho statute of frauds and would be enforceable in that state. *See Barbour*, 168 P.2d at 880. However, an oral contract was unenforceable under Kansas's statute of frauds. *See id.* The Kansas Supreme Court noted the objective of the Kansas statute is to prevent frauds and perjuries, and applying Idaho law would "open the door to all manner of frauds and encourage the baldest sort of perjury." *Id.* In other words, applying the Idaho statute would defeat the Kansas public policy objective underlying the Kansas statute. Accordingly, the supreme court invoked the public policy exception, applied the Kansas statute, and refused to enforce the alleged oral contract. *See id.*

On the other hand, the Kansas Supreme Court did not apply the public policy exception when an automobile liability insurance policy provision was consistent with the Kansas public policy objective behind a Kansas statute. *See Safeco*, 941 P.2d at 1373. In *Safeco*, the insured was a Missouri resident, the insurance policy was issued in Missouri, and the car accident occurred in Kansas. *See id.* at 1366. The issue was whether the insurer was entitled to subrogation for payments it made to its insured for his medical expenses. *See id.* at 1367-68. The insurer was not entitled to subrogation if the policy's medical expenses

coverage and Missouri law applied, but was if the supreme court determined Kansas's statutorily mandated personal injury protection benefits eliminated the policy's coverage. *See id.* at 1368-69. The supreme court concluded: "The medical payment provision of the Missouri policy does not violate Kansas public policy but, to the contrary, is consistent with the stated policy of [the Kansas Automobile Injury Reparations Act] by promptly compensating its insured for personal injuries." *Id.* at 1373. The supreme court emphasized "the dispute is between the parties to the insurance policy," and held they were bound to the terms of the policy and Missouri law in order to ensure that the insured received the benefit of his bargain. *Id.*

We conclude New York's bad faith standard is consistent with the Kansas public policy objectives underlying the cause of action in this case, and, unlike the situations in *St. Paul* and *Barbour*, does not thwart or defeat them. In light of the consistent objectives and the fact the insurance policy was made, entered, and issued in New York to a New York citizen, we believe the application of New York law does not violate Kansas's settled public policy objectives as described above. We hold this case reflects nothing more than a mere difference in the law, which is not sufficient to justify the application of the Kansas public policy exception to its *lex loci contractus* rule. *See Alexander*, 952 F.2d at 1223-24; *cf.*

*Safeco* , 941 P.2d at 1368-69, 1372-73.

Although plaintiffs argue the application of New York law is "repugnant" to Kansas's public policy objectives, we believe, to the contrary, New York law is consistent with those objectives. This consistency is evidenced by: (1) both New York and Kansas provide a cause of action by the insured against an insurer for a bad faith failure to settle a claim within policy limits, and (2) the bad faith standards of each state mirror one another. *See supra* Parts II, IV.A and note 4. Additionally, New York's bad faith standard and Kansas's bad faith or negligence standard emanate from and seek to serve the same public policy objectives: protecting the insured's interests in light of his relinquishment of control of the case to the insurer, encouraging settlements, and preventing unnecessary litigation merely because an insurance company decides to try all cases as a matter of policy. *Compare Pavia* , 626 N.E.2d at 27 ("At the root of the 'bad faith' doctrine is the fact that insurers typically exercise complete control over the settlement and defense of claims against their insureds."), *and* *Pinto v. Allstate Ins. Co.* , 221 F.3d 394, 399 (2d Cir. 2000) (applying *Pavia* ) ("The availability of a bad faith cause of action encourages settlements that are in the insured's best interests, and also discourages insurance companies from refusing to settle as a matter of policy." (citation omitted)), *with supra* Part IV.B

(identifying Kansas's settled public policy objectives in this type of case).
Accordingly, although the standards may differ in that New York does not
recognize negligence as a basis for liability, New York's bad faith standard
cannot be said to thwart or defeat Kansas's settled public policy objectives. *See
Bollinger* , 449 P.2d at 509 ("While the terms 'negligence' and 'bad faith' are not
synonymous or interchangeable in a strict legal sense, they share common hues in
the insurer's spectrum of duty.").

Further, the only connection to Kansas in this case is that the car accident
occurred there. *See Safeco* , 941 P.2d at 1366; *supra* Part I. Mr. Mirville is a
New York resident and citizen, and Allstate is an Illinois corporation. *See supra*
Part I. The cause of action is based on their contractual relationship, which was
entered into in New York. *See supra* note 2 and Part I. As stated by the district
court:

> The issue essentially boils down to whether applying the standard of
> care concerning the settlement of insurance claims established by the
> New York courts to a contract entered into in the state of New York,
> between a New York resident and his insurance company, would
> violate Kansas public policy. The court finds that it would not.

*Mirville* , 71 F. Supp. 2d at 1108. We agree. *See Safeco* , 941 P.2d at 1373. [6]

---

[6] With respect to the portion of the district court's opinion from which we quote, plaintiffs argue "[t]here is no basis in law or equity for the district court's exclusion of non-residents from protection of the Kansas public policy at issue." We do not read the

We hold the district court correctly concluded the Kansas public policy exception does not apply in this case. Accordingly, we affirm the district court's application of New York's bad faith standard to this case in both its summary judgment and final orders.

V. Conclusion

The judgment of the United States District Court for the District of Kansas is **AFFIRMED** .

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

district court's choice of law ruling in this way, nor should our order and judgment be so interpreted. Like the district court, we are simply making the point that the facts of this case are more closely aligned to *Safeco* than *St. Paul* or *Barbour*, and our holding should reflect this difference.