SW INDUSTRIES, INC.

v.

AETNA CASUALTY & SURETY CO.,
Alias the Employers' Liability Assurance Corporation, Ltd., alias; the Travelers Insurance Company, alias; American Home Assurance Company, alias; National Union Fire Insurance Company of Pittsburgh, Pa., alias; JF Green & Others, alias; HS Weavers, alias; Underwriters At Lloyd's, London.

Civ. A. No. 86–0302 P.

United States District Court,
D. Rhode Island.

Oct. 15, 1986.

John F. Bomster, Richard G. Galli, Michael DeFanti, Gerald J. Petros, Providence, R.I., for SW Industries, Inc.

Robert Lovegreen, Providence, R.I., for Aetna Cas. & Sur. Co.

Hugh L. Moore, Jr., Providence, R.I., for American Home Assur. Co. and National Union Fire Ins. Co. of Pittsburgh, Pa.

Joseph A. Kelly, C. Russell Bengston, Providence, R.I., for Travelers Ins. Co.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiff in this action, SW Industries, Inc. ("SW"), has requested this Court to issue a preliminary injunction against seven defendant insurance companies ("the Insurance Companies"). As explained in more detail below, an Ohio division of SW was sued by an employee and found by an Ohio jury to have intentionally exposed the employee to toxic substances. The jury awarded $3,500,000 in damages, and this award was increased by an intermediate appellate court to $3,650,000. SW has since filed an appeal petition with the Ohio Supreme Court and is awaiting certification of this petition.

In the meantime, SW has filed suit in this Court, seeking a declaratory judgment holding the defendant Insurance Companies liable for the defense costs and damage liabilities arising out of the Ohio litigation. Because SW and the Ohio plaintiffs are now engaged in settlement negotiations, SW has requested that this Court preliminarily enjoin each insurance company from breaching their alleged obligations to contribute to any settlement reached and from challenging the settlement amount. For reasons discussed below, I am denying SW's request for preliminary injunctive relief.

### I. *Factual Background*

#### A. The Viock Litigation

SW is a Delaware corporation with its principal place of business in Providence, Rhode Island. It operates a factory in Sandusky, Ohio known as the Stow-Woodward Division ("Stowe-Woodward"). Carl Viock ("Viock") was an employee of Stowe-Woodward from January, 1968 to June 1, 1981. In January, 1976 Viock was hospitalized with breathing problems and diagnosed as having a serious lung injury caused by exposure to chemicals at work. Viock returned to work later that year, equipped with a machine to be used for a prescribed course of self-administered lung treatment. His lung condition continued, and he was awarded workers' compensation in January, 1979. In May, 1981 Viock was examined by a company physician. Based on that exam, he was given a medical discharge effective June 1, 1981.

Ohio, like most states, operates a workers' compensation system that bars employee lawsuits upon workplace injuries covered by the system. In 1982, however, the Ohio Supreme Court carved out from this bar an exception for intentional torts committed by the employer. *Blankenship v. Cincinnati Milacron Chemicals*, 69 Ohio St.2d 608, 433 N.E.2d 572, *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982). On February 5, 1982 Carl Viock and his wife and children filed a complaint against Stowe-Woodward in the Erie County Court of Common Pleas. The complaint raised *Blankenship*-type claims, alleging specifically that from January, 1968 to June, 1981 Stowe-Woodward "fraudulently, intentionally and/or maliciously exposed Viock to toxic substances at dangerous levels."

The case went to trial on May 14, 1984, and on June 6, 1984, the jury, in response to interrogatories, found that Stowe-Woodward had intentionally exposed Carl Viock to toxic substances that caused his injuries. Final judgment was entered on June 26, 1984 awarding Viock and his family $1,000,000 in compensatory damages and $2,500,000 in punitive damages. *Viock v. Stowe-Woodward Co.*, No. 44358 (Erie County Ct. of C.P., June 26, 1984).

Viock and his family took an appeal, alleging error in the trial court's application of comparative negligence findings to reduce the jury's original damage verdict. SW cross-appealed, alleging eleven errors relating to jury instructions and interroga-

tories, statutes of limitations rulings, and the allowance of consortium, punitive and lost wages damages. The appellate court granted Viock's assignment of error and granted one of SW's assignments of error, which challenged the award of loss of consortium damages to Viock's children. *Viock v. Stowe-Woodward Co.*, No. E-84-27 (Erie County Ct. App., March 14, 1986) [Available on WESTLAW, OH-CS database]. The net result of these two modifications was to increase the Viocks' compensatory damages award by $150,000, bringing the total damages award to $3,650,000. SW has since filed a motion to certify an appeal, which is presently pending before the Ohio Supreme Court.

Throughout the Viock litigation, one of SW's insurance carriers, Lumbermens Mutual Casualty Co. ("Lumbermens"), has paid some or all of SW's defense costs. The precise share of SW's defense costs paid by Lumbermens is a disputed fact.

### B. The Insurance Litigation

#### 1. The Ohio Action

On May 9, 1986 Lumbermens filed a complaint against SW in the federal district court for the Northern District of Ohio. Asserting the court's jurisdiction on the basics of diversity of citizenship, 28 U.S.C. § 1332, Lumbermens requested a declaratory judgment holding, among other things, that SW was not entitled to indemnification from Lumbermens for any damages paid by SW to the Viocks. On May 30, 1986, Lumbermens filed an amended complaint, adding SW's other insurers as defendants and requesting a declaratory ruling as to their liabilities to SW arising out of the Viock litigation.

#### 2. The Rhode Island Action

On May 15, 1986 SW filed a complaint in this Court against the Insurance Companies, asserting jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332. On May 21, 1986, SW filed an amended complaint. SW seeks two declaratory rulings: first, that the damages awarded to the Viocks are covered by the policies issued to SW by its insurance carriers; and second, that SW's insurance carriers have acted in bad faith by denying their contractual liabilities allegedly arising out of the Viock litigation.

On May 27, 1986 SW filed a motion for a preliminary injunction, requesting the following specific relief: first, restraining each insurance company from breaching its alleged duty to indemnify SW for the Viock damages; second, requiring each insurance company to contribute to a settlement of the Viock claims by SW; third, if necessary, requiring the Insurance Companies to interplead and settle among themselves the indemnity owed by each to SW; and fourth, restraining each insurance company from challenging the amount of any settlement reached between SW and the Viocks.

SW's preliminary injunction motion was followed by two other significant motions. First, on June 30, 1986 SW moved for partial summary judgment on the issue of the Insurance Companies' obligation to pay for SW's defense costs in the Viock litigation. Second, on July 11, 1986 defendant Lumbermens filed a motion to dismiss or stay the Rhode Island litigation, or in the alternative, to transfer the venue of SW's pending Rhode Island claims to the Northern District of Ohio.

In addition, defendant Lumbermens has filed a motion for extension of time to respond to SW's motion for a preliminary injunction. Because I have already decided to deny SW's motion for a preliminary injunction, this latter motion of Lumbermens is hereby dismissed as moot.

## II. *Discussion*

In the First Circuit, a plaintiff must satisfy four criteria to obtain a preliminary injunction:

> The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and

(4) that the public interest will not be adversely affected by the granting of the injunction.

*LeBeau v. Spirito,* 703 F.2d 639, 642 (1st Cir.1983), *quoting Women's Community Health Ctr., Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979).

■ "[T]he prime prerequisite for injunctive relief is the threat of irreparable future harm," *National Tank Truck Carriers v. Burke,* 608 F.2d 819, 824 (1st Cir. 1979), *quoting Quechan Tribe of Indians v. Rowe,* 531 F.2d 408 (9th Cir.1976). SW has not shown that it will suffer irreparable harm if an injunction is not granted, nor do I find any support for SW's contention that it could make such a showing at an oral hearing. If the ultimate relief sought by a plaintiff can be satisfied by an award of money damages, the plaintiff's alleged harms are not irreparable. *Thompson v. New York Central Railroad,* 361 F.2d 137, 145–46 (2d Cir.1966); *Smith v. Newport National Bank,* 326 F.Supp. 874, 878 (D.R.I.1971); 11 Wright & Miller, *Federal Practice and Procedure* (Wright & Miller) § 2948 at 434 (1973). Here, the ultimate relief sought by SW is indemnification allegedly owed by the Insurance Companies under policies issued to SW. If, after settlement, SW's request for indemnification is denied by the defendants, SW has an adequate remedy at law under an action for breach of contract.

■ The only irreparable harm conceivable in this case would arise from SW's lacking the necessary funds to cover simultaneously the operation of its business and the payment of damages to the Viocks prior to receiving indemnification. But SW has alleged no such threat to the continued operation of its business.

Rather, SW has alleged a much less apparent kind of harm. SW seems to contend that, by not having the assurance that it will be indemnified for any settlement reached with the Viocks, the following events are likely to occur: any settlement SW makes will be less prudent or reasonable than would otherwise be the case, and therefore, its insurance carriers will be more likely to escape liability on the ground that the settlement reached was unreasonable. As SW framed the argument,

> The probability that the right [to insurance coverage] may be defeated is evident: by declining coverage now, the carriers put SW in the position of having to contend with settlement demands *as if* a much larger slice of SW's assets were at risk; yet if a settlement in the face of that pressure is effected, the carriers may then "second guess" it to have been excessive or unnecessary, and SW will be faced with proving the "reasonableness" and necessity of a settlement process with which the carriers were not connected.

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction at 6 (emphasis in original).

Such logic is insufficient to support a finding of irreparable injury. In the first place, it is counterintuitive. A company lacking assurance that it will be indemnified by its insurers would seem likely to exercise more, not less, caution and prudence in settlement negotiations. Second, as a conclusory theory unsupported by factual allegations, SW's argument is too speculative. "Speculative injury does not constitute irreparable injury," *Goldie's Bookstore, Inc. v. Superior Court of the State of California,* 739 F.2d 466, 472 (9th Cir.1984).

A problem similar to the one before this Court was presented to the Second Circuit, by a fire insurance claimant who had been indicted for arson. Recovery under the insurance policy was conditioned upon the claimant's answering questions under oath regarding the claim. The insured sought an injunction against enforcement of this condition, contending that irreparable harm would result from having to choose between answering questions in derogation of his Fifth Amendment right against self-incrimination, and refusing to answer questions in derogation of his conditional right to recover on his insurance policy. Even here, where the harm was clearly forseea-

ble from the facts, the Second Circuit affirmed the lower court's denial of injunctive relief, reasoning that until the claimant has been sworn and the insurance company has asked the question that would put the claimant's constitutional and contractual rights at risk, "the dilemma which the appellant attempts to present is a fictitious one." *Hudson Tire Mart, Inc. v. Aetna Casualty & Surety Co.*, 518 F.2d 671, 674 (2d Cir.1975).

The dilemma allegedly confronted by SW in its settlement negotiations is far less acute than that presented by the claimant in the *Hudson* case, and presents a less imminent risk to SW's alleged rights under its insurance contracts. As such, it cannot provide the basis for this Court's finding that SW is faced with a threat of irreparable harm.

■ The second prerequisite for granting a preliminary injunction is a finding that the harm suffered by the plaintiffs in the absence of the injunction outweighs the harm inflicted on the defendants by the granting of the injunction. *LeBeau v. Spirito*, 703 F.2d 639, 642 (1st Cir.1983). The harm suffered by SW from a denial of the requested injunction involves the consequences of waiting for an adjudication on the merits of SW's insurance claims. My discussion of this question above leads to the conclusion that SW will not suffer substantial harm if the injunction is denied. The harm suffered by the Insurance Companies if the injunction is granted involves the consequences of paying out a substantial indemnity before an adjudication on the merits of SW's alleged contractual right to the indemnity. These consequences would involve substantial harm if SW's insurance claims are subsequently found to lack merit and SW fails to reimburse its insurers for the amounts they were wrongfully enjoined to pay.

However, SW has offered to post a bond to protect its insurance carriers against such possible harm. When an injunction bond can compensate the defendants for the harm they would likely suffer as a result of the injunction, many courts have

ruled that the balance-of-harms tips in favor of the plaintiff. *Ohio Oil Co. v. Conway*, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929); 11 Wright & Miller § 2948 at 444.

Still, the plaintiff's willingness to post an injunction bond does not conclude the balance-of-harms inquiry. Another factor relevant to the inquiry is the nature of relief sought, as between prohibitory and mandatory injunctions. Mandatory injunctions "'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Automatic Radio Manufacturing Co. v. Ford Motor Co.*, 272 F.Supp. 744, 749 (D.Mass.1967), *aff'd* 390 F.2d 113 (1st Cir.), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968) (*quoting Clune v. Publishers Association of New York City*, 214 F.Supp. 520, 531 (S.D.N.Y.), *aff'd*, 314 F.2d 343 (2d Cir.1963)).

SW has characterized its requested relief as restraining the defendant Insurance Companies from breaching their contracts, implying that the requested injunction is prohibitory. But the affirmative nature of the conduct that SW is requesting of the defendants—indemnify SW, contribute to a settlement with the Viocks, and interplead among themselves—requires that the requested injunction be characterized as mandatory. As such, it falls far short of the threshhold criteria listed in *Automatic Radio, supra*, namely, that the injunction be justified by the threat of very serious injury that is not compensable in damages.

Preliminary injunctions of a mandatory nature are particularly disfavored when their effect would be to grant the ultimate relief sought by the moving party. *Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 995 (1st Cir.1982), *rev'd on other grounds*, 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Bricklayers, Masons, Marble & Tile Setters Union No. 7 v. Lueder Construction Co.*, 346 F.Supp. 558, 561 (D.Neb.1972). In this case, the ultimate relief sought by SW is a declaratory judgment holding that the

Viocks' damages are covered within the policies issued to SW by the defendants. An injunction that required the defendants immediately to indemnify SW for a settlement reached with the Viocks would in effect grant the ultimate relief requested by SW.

The third criterion to be satisfied before an injunction should issue is that the moving party show a likelihood of success on the merits of its claim. To satisfy this criterion, SW must show that the Viocks' damages are likely to be covered by the insurance policies allegedly issued by the defendants to SW. SW has submitted neither affidavits nor copies of the relevant insurance policies in support of its preliminary injunction motion. With its amended complaint, SW filed an exhibit that listed the types of policies allegedly issued by the seven defendants but omitted to specify any policy language showing the Viocks' damages to be covered. Similarly, with its subsequently-filed motion for partial summary judgment, SW included an affidavit that listed a variety of insurance policies without revealing any of the terms and conditions of the policies. In their objections to SW's preliminary injunction motion, five of the defendants have denied liability for the Viocks' damages, and one, Employers' Liability, has furnished a copy of language within its policies issued to SW that appears to exclude the Viocks' damages from coverage.

When the moving party has shown scant evidence of threatened injury, " 'the showing that he is likely to prevail on the merits is particularly important.' " *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974) *quoting* 11 Wright & Miller § 2948 at 455. Where, as here, such "particular importance" is attributable to the showing of likely success on the merits, I find the plaintiff's failure to submit written evidence on the merits to be highly questionable.[1] SW contends that it will show a probable right to the claimed

insurance coverage at a hearing on the motion, but I am not persuaded that any further evidence presented by SW could affect the series of findings I have already made that weigh conclusively against the granting of injunctive relief.

For the same reason, I need not discuss at length the fourth criterion for granting injunctive relief, namely, a finding that the public interest will not be adversely affected by the granting of the injunction. I would briefly note, however, that this case implicates a significant public policy interest of the state of Ohio, which is the locus of Viock's injury and of the plaintiff's manufacturing plant that was held liable for the injury. The Ohio Supreme Court has held the insurance of intentional torts to be against public policy. *Blankenship v. Cincinnati Milacron Chemicals*, 69 Ohio St.2d 608, 615, 433 N.E.2d 572 (1982). Whether Ohio law applies in this case and, if so, whether the intentional tort of SW found by the *Viock* jury falls within the public policy bar announced in *Blankenship*, are issues to be resolved at a later stage in this case. But SW's failure to show that Ohio public policy would not be adversely affected by this Court's grant of injunctive relief provides further support for the denial of SW's motion.

In reviewing the merits of SW's motion, I have focused on SW's requests that the Insurance Companies be enjoined to indemnify SW and to contribute to any settlement reached between SW and the Viocks. As a result of my ruling that such relief is inappropriate at this time, the additional injunctive relief requested by SW is now premature. There is no immediate need for the Insurance Companies to interplead among themselves, nor is SW entitled to an order prohibiting the Insurance Companies from challenging a prospective settlement that may be reached between SW and the Viocks.

To sum up, I cannot find that SW faces a threat of irreparable harm, nor do I have

---

1. Such failure also runs counter to this Court's rule 12(a)(1), which requires the moving party to submit "any affidavits and other papers or materials setting forth or evidencing facts on which he bases the motion."

any basis for finding that SW is likely to succeed on the merits of its claim. I further find that SW is requesting this Court to issue a mandatory injunction that would provide the ultimate relief sought by SW in this case. Finally, I find at least the possibility of an adverse impact on the public interest that has not been addressed by SW. For these reasons, I hereby deny SW's motion for injunctive relief.

So Ordered.