James STUCKEY, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant.

No. 15 Civ. 6639(CM).

United States District Court, S.D. New York.

Signed Sept. 15, 2015.

Florence Marie Beauboeuf, John Kolsin Crossman, Zukerman Gore, Brandeis & Crossman, LLP, New York, NY, for Plaintiff.

Alexander Seton Lorenzo, Joseph Gerard Tully, Alston & Bird, LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

McMAHON, District Judge:

This action arises from an insurance company's alleged failure to (1) advance defense costs to an insured for claims covered under the policy, and (2) authorize comprehensive settlement among the insureds and the plaintiff in litigation giving rise to the covered claim.

Now before the court is Plaintiff James Stuckey's motion for a preliminary injunction enjoining Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") to (1) reimburse his past defense costs and advance ongoing defense costs, and (2) authorize and indemnify settlement between Stuckey and the plaintiff in the underlying litigation. Plaintiff also asks the court to consolidate the preliminary injunction hearing with a trial on the merits.

## BACKGROUND

From 2009 to September 2011, Plaintiff James Stuckey was the Dean of the Shack Institute of Real Estate at New York University ("NYU"). (Compl., ¶ 11.) On the night of September 23, 2011, Plaintiff allegedly sexually harassed one of his subordinates. (Id.) Plaintiff left his employment at NYU a week later. (Id.)

In January 2012, Plaintiff's subordinate brought claims in state court against both Plaintiff—for sexual harassment and assault and battery—and NYU ("the Underlying Action"). (Id.)

At the time of both the alleged incident and the initiation of the Underlying Action, NYU maintained a Manuscript NFP Individual and Organization Insurance Policy,

policy number 02–250–55–41 (the "Policy"), issued by National Union. (Id. at ¶ 17.)

In March 2012, pursuant to the Policy, NYU tendered notice of the claim to National Union. (Id. at ¶ 12.) Neither NYU nor National Union told Plaintiff about the existence of the Policy or the fact that he might be covered by it. (Id.) However, National Union responded to NYU with a preliminary analysis, which stated, *inter alia*, that "coverage is potentially afforded to New York University and James Stuckey subject to our continuing analysis and reservations contained herein." (Compl., Ex. A.) One of the aforementioned reservations stated that Plaintiff was *not* covered under the Policy for the assault and battery claim, because Policy Exclusion 4(h) excludes coverage for claims:

> alleging, arising out of, based upon or attributable to in any way directly or indirectly, bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof . . . .

(Compl., Ex. A; Compl., Ex. F, Policy § 4(h).) The Exclusion does, however, carve out an exception for the other claim—the sexual harassment claim—against Plaintiff:

> this exclusion shall not apply to that portion of a Claim which constitutes:
> (i) An Employment Practices Claim.

(Id.)

The Policy defines an "Employment Practices Claim" as one that alleges an "Employment Practices Violation." Policy § 2(f). An "Employment Practices Violation" includes alleged or actual "harassment (including sexual harassment whether 'quid pro quo', hostile work environment or otherwise.)" (Compl., Ex. F, Policy § 2(g)(2).)

National Union also stated, in the initial letter to NYU, that Endorsement # 5

might be applicable. (Compl., Ex. A.) That endorsement excludes coverage if there is a final adjudication of intentional discrimination. (Compl., Ex. F, Policy, Endorsement # 5.)

Because Plaintiff was not aware of the Policy or the possibility that he might be covered under it, he retained his own defense counsel and paid the cost of litigation out of his own pocket. (Compl., ¶ 14.) Then, after more than three years of litigation—during which Plaintiff had paid hundreds of thousands of dollars in attorneys' fees—his lawyer received an email from National Union on April 24, 2015. (Id. at ¶ 15.) It read, in full:

John—on behalf of the insurance carrier, I have been assigned to handle the claim brought by Stephanie Bonadio against your client James Stuckey. Please provide me with a current status update for the case including any upcoming dates. Please also let me know what defense costs to date are (billed and unbilled) and have copies of your firm's invoices forwarded to me. Thank you.

Mike

(Compl., Ex. A.)

The written record does not reveal why National Union did not advise Plaintiff about the existence of the policy for over three years of litigation. At oral argument, National Union indicated that it believed NYU intended to indemnify Plaintiff for defense costs within its $500,000 retention (see below, page 5). By the same token, Plaintiff's counsel had no good reason for failing to explore the possibility that his client was insured.

## A. The Policy

The Policy provides coverage for both NYU and "Individual Insured(s)," which it defines as "a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, *department head*, committee member (of a duly constituted committee of the Organization), *staff or faculty member (salaried or non-salaried)*, Employee or volunteer of the Organization." (Compl., Ex. F, Policy § 2(i) (emphases added).) There is no dispute that Plaintiff qualifies as an Individual Insured under the Policy.

Coverage A of the Policy, titled "Individual Insured Insurance," provides that:

This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his/her respective capacities as an Individual Insured of the Organization, *except w hen and to the extent that the Organization has indemnified the Individual Insured.* The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

(Compl., Ex. F, Policy § 1 (emphasis added).)

Coverage B of the Policy, titled "Organization Indemnification Reimbursement Insurance," provides that:

This policy shall pay on the behalf of the Organization Loss arising from a Claim first made against an Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his/her respective capacities as an Individual Insured of the Organization, *but only when and to the extent that the Organization has indemnified such Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or Bylaws of the Organization duly effective*

*under such Law which determines and defines such rights of indemnity.* The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

(Policy § 1 (emphasis added).)

NYU has not indemnified Plaintiff for any of the costs he has incurred defending the Underlying Action. (Compl., ¶ 18.) When Plaintiff inquired about indemnification, NYU told him that "any potential indemnification of Mr. Stuckey is not ripe at this time since questions of indemnification are routinely, and appropriately, determinable upon conclusion of an action." (Compl., Ex. T.) It remains unclear whether NYU will indemnify Stuckey—which may affect his coverage under the Policy.

The Policy defines "Claim" and "Loss" broadly. It defines a "Claim" to include, among others things, "a civil ... proceeding for monetary or non-monetary relief which is commenced by: (i) service of a complaint or similar pleading." (Compl., Ex. F, Policy § 2(b)(2)(i).) It defines "Loss" to include "damages, (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act and Defense Costs," and excluding certain categories not relevant here. (Compl., Ex. F, Policy § 2(k).)

Although National Union does not have a duty to defend the insured, the Policy provides that it "shall advance Defense Costs (excess of the Retention amount) of such Claim prior to its final disposition." (Compl., Ex. F, Policy § 1.) It further provides that "when the Insurer has not assumed the defense of the Claim pursuant to Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim." (Compl., Ex. F,

Policy § 8.) "Defense Costs" are in turn defined as "reasonable and necessary fees, costs and expenses consented to by the Insurer ... resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of Individual Insureds." (Compl., Ex. F, Policy § 2(d).)

The Policy's "Retention Clause"—which is referenced in the Policy's description of Defense Costs—states that:

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5(B) of the Declarations, such Retention amount to be borne by the Organization and shall remain uninsured, with regard to all Loss for which the Organization has indemnified or is permitted or required to indemnify the Individual Insureds ("Indemnifiable Loss") and Loss under Coverage C. A single retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Conduct or Related Wrongful Acts.

(Policy § 6.) The Policy declaration lists the relevant retention amount as $500,000. (Policy Declarations, Item 5.) By its terms, the Retention Clause applies to Loss NYU suffers when indemnifying individual insureds under Coverage B, above, or incurs under Coverage C (which is irrelevant to this litigation); it does not apply to Loss, including Defense Costs, incurred by Individual Insureds.

Finally, the Policy outlines the responsibilities and obligations of the parties with respect to settlement. The Policy provides that the "Insured shall not admit or assume any liability or incur any Defense Costs *without the prior written consent of the Insurer.*" (Compl., Ex. F, Policy § 8.) It further provides that, "in all events the Insurer may withhold consent to any settlement, stipulated judgement or Defense Costs, or any portion thereof, to the extent

such Loss is not covered under the terms of this policy." (*Id.*) And National Union is permitted to "effectively associate with the insureds in the defense of any Claim ... including but not limited to negotiating a settlement." (*Id.*)

## B. Correspondence

In early May, the parties engaged in a series of preliminary discussions. On May 4, 2015, Plaintiff's counsel responded to Mr. Hayward's April 24 email and requested a copy of the Policy, which he had not seen before. (Compl., Ex. B.) On May 7, Plaintiff's counsel also provided the invoices that Mr. Hayward requested, which detailed the costs incurred in Plaintiff's defense of the Underlying Action. (Compl., ¶ 33.) On May 12, Mr. Hayward informed Plaintiff's counsel that the invoices would be reviewed by National Union. (Compl., Ex. H.)

The subsequent correspondence between Plaintiff's counsel and Mr. Hayward related to two main issues: (1) payment for defense costs under the Policy, and (2) authorization to engage in settlement negotiations—primarily for NYU, but also for Plaintiff.

### 1. Defense Costs.

After the initial correspondence, Plaintiff's counsel and Mr. Hayward discussed which type of coverage applied to Plaintiff's claims, and whether that coverage required any type of retention amount or deduction that Plaintiff would have to front

before being reimbursed by National Union. Plaintiff argued that he was covered under Coverage A, which applies when the Organization (here, NYU) has not indemnified the employee. Despite the fact that NYU had not indemnified Plaintiff, Mr. Hayward expressed his belief that Coverage B, which applies when NYU does indemnify the employee, was the operative provision. (*See, e.g.,* Compl., Ex. K.) Plaintiff told Mr. Hayward multiple times that, despite Plaintiff's request, "New York University has refused to indemnify Mr. Stuckey for this claim." (*See, e.g.,* Compl., Ex. R.) The matter is critical, because Coverage B contains a "self-insured retention" requiring the insured's expenditure of hundreds of thousands of dollars before National Union's monetary obligations kick in; the provision functions much like a deductible for health insurance.

Plaintiff's counsel tried in vain to decipher the analysis that led National Union to its stance on the coverage and retention questions; the company simply stopped responding to inquiries on the issue. (*See, e.g.,* Compl., Ex. P.)

On June 16, 2015, Mr. Hayward provided the results of National Union's invoice review. (Compl., Ex. J.) In that review, National Union disputed several categories of fees submitted by Plaintiff's counsel. In particular, it contended that the following fees were disallowed and would not be reimbursed, for the reasons listed:

| Description | Amount |
| --- | --- |
| Rate Variance Above $300/$300/$125 | $133,408.82 |
| Pre–Tender Billing | $34,784.13 |
| Administrative | $3,043.50 |
| Block Billing | $15,524.20 |
| Duplication of effort | $975.00 |
| Excessive | $582.50 |
| Non-billable | $4,195.00 |
| Paralegal level activity | $2,020.00 |

| | |
|---|---|
| Redacted | $540.00 |
| Vague Description | $10,557.00 |
| Expenses: Non-billable | $11,932.59 |
| Expenses: Unsupported | $7,484.60 |

(*Id.*)

National Union declared that the remainder—$201,635.32—was "undisputed." (*Id.*) But, at the time of the invoice review, National Union took the position that Plaintiff was an indemnified person within the meaning of Coverage B, and so was not entitled to immediate reimbursement of defense costs. (Compl., Ex. Q.) It took the filing of the present action to force National Union to pay Plaintiff this "undisputed" amount. The payment confirmation included with Defendant's opposition brief is dated September 3, 2015—the day before National Union filed its brief. (*See* Declaration of Alexander S. Lorenzo In Support Of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, Ex. A (Docket # 12).)

National Union (1) has now reimbursed Plaintiff for a portion of what he has expended in defense costs, (2) does not dispute Plaintiff's right to advancement of reasonable defense costs, and (3) represents that it will continue to advance reasonable defense costs going forward. (*See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction at 6 (Docket # 11).). This court understands, from National Union's brief, that it now believes Plaintiff is entitled to reimbursement under Coverage A and that Plaintiff is not required to expend any of his personal money before being entitled to advancement of defense costs.

The dispute that remains over defense costs is not whether they must be reimbursed, but whether the amounts for which Plaintiff seeks reimbursement are "reasonable." Of particular moment is whether National Union's maximum billing rate is "reasonable" in these circumstances, where Plaintiff was unaware of his coverage when he retained counsel.

The parties' correspondence does not shed much light on that dispute. On May 12, before National Union's billing review was completed, Plaintiff's counsel asked Mr. Hayward for the source of the billing rates Mr. Hayward referred to as the maximum allowed under the Policy. (Compl., Ex. K.) Mr. Hayward responded the next day, stating that the Exception Firm Approval Form—which insureds must submit to National Union (assuming they know of the Policy)—lists the maximum rates. (*Id.*) Of course, Plaintiff did not know about the Policy, so he never submitted an Exception Firm Approval Form before retaining counsel. Mr. Hayward also referenced the Policy section on Defense Costs that obligates National Union to advance "reasonable and necessary" fees. He concluded that, "Up to $300.00 per hour for attorney time and up to $125.00 per hour for paralegal time is what the insurer considers to be reasonable." (*Id.*)

Plaintiff's counsel continued to press Mr. Hayward. He asked whether it was National Union's position that the insurer is permitted to determine on its own what constitutes "reasonable" fees and why the Exception Firm Approval Form—which permits an insured to select counsel not identified by National Union as "panel counsel"—applied to the type of claim arising from the Underlying Action. (Plaintiff's Exhibit 7.) Mr. Hayward replied that he would answer later in more detail (though the record contains no answer to those questions), but added that "[i]n the interim, I would recommend that your client retain for his defense going forward

one of the 30 below New York panel counsel law firms so that the insurer can reimburse 100% of the hourly rates billed." (*Id.*) Plaintiff's counsel objected that it was "far too late for the insurance carrier to suggest that Mr. Stuckey hire a different law firm, given that we have been representing him for over two years in intensive litigation of this case, and this is the first time you have ever suggested that he should hire some other law firm." (*Id.*)

Plaintiff's counsel never agreed that National Union's hourly maximums set the ceiling on "reasonable" fees, especially as Plaintiff was unaware of the Policy and its limits when he hired counsel. Nonetheless, on multiple occasions, Plaintiff's counsel demanded that National Union at least pay the amount it determined to be "undisputed." (*E.g.*, Compl., Ex. M.) As noted above, National Union has now done so.

## 2. Settlement Authority

Plaintiff also sought Mr. Hayward's assistance in settling the case. Mr. Hayward first broached the topic in May 2015, when he wrote to Plaintiff's counsel:

> Would it be possible to schedule the case for mediation, attempt to settle for a reasonable amount, and then that way the insurer can make payments, resolving the outstanding indemnification, etc. issues?

(Compl., Ex. S.) Plaintiff's counsel informed Mr. Hayward that the plaintiff in the Underlying Action would not engage in settlement discussions without NYU present, and that NYU was asserting that it could not come to the table because National Union failed to authorize any settlement. (*Id.*) Mr. Hayward asked if they could "mediate just the claims against Mr. Stuckey without NYU or attempt informal settlement negotiation to resolve the claims against Mr. Stuckey?" (*Id.*) He also asked what Plaintiff's counsel believed "a fair and reasonable settlement value is with respect to the claims against Mr.

Stuckey[.]" (*Id.*) Plaintiff's counsel said he would respond more fully later, but he implored Mr. Hayward to intercede with National Union to facilitate a comprehensive settlement with NYU. A few days later, Mr. Hayward replied,

> I'm only handling the claims against Mr. Stuckey. If defense counsel reaches out to the insurance contact for the claims against NYU I'd be very surprised if they opposed pursing mediation. Maybe defense counsel for NYU can follow-up on that and we can try to get a mediation scheduled for early July.

(*Id.*)

On June 15, 2015, Plaintiff's counsel provided his estimate of a reasonable settlement amount, and told Mr. Hayward he believed that "National Union's ongoing refusal to permit and facilitate a mediation including NYU has materially harmed the prospects for settlement of this case." (Compl., Ex. I.) Plaintiff's counsel continued to ask Mr. Hayward—as an employee of National Union, who could presumably escalate the issue or speak with his colleague handling the NYU claim—to foster the kind of global settlement discussions that the plaintiff in the Underlying Action demanded (*Id.*) He received no response.

At the end of June, Plaintiff's counsel forwarded to Mr. Hayward an adverse appellate decision in the Underlying Action that allowed the plaintiff to expand discovery. He "implore[d] [Mr. Hayward] to get National Union to stop wasting time and help the parties settle the case." (Compl., Ex. N.) The record contains no response.

Finally, Plaintiff's counsel sent Mr. Hayward two letters in August before filing suit. In the first letter, he restated his demand that Mr. Hayward "intercede to stop National Union's policy of not authorizing NYU to make any settlement offer whatsoever." (Compl., Ex. P.) He also informed Mr. Hayward about a settlement

demand the plaintiff in the Underlying Action made that day; he told Mr. Hayward that Plaintiff needed to respond, but that "National Union's continued failure to uphold its obligations is impeding efforts to settle the case." (*Id.*) Mr. Hayward replied the next day. He repeated that he was "only handling the claims brought against Mr. Stuckey and ha[d] no involvement with the claims brought against NYU." (Compl., Ex. Q.) He asked for any correspondence in which the plaintiff made her settlement demand, and added:

> Your 8/4/15 letter requests authority to [redacted]. As such, it appears that you believe the fair and reasonable settlement value of the claims against Mr. Stuckey [redacted]. Please provide a case assessment in the form attached as Appendix A so that the insurance carrier can evaluate your request for settlement authority.

(*Id.*)

On August 10, Plaintiff's counsel replied to Mr. Hayward's email. (Compl., Ex. R.) He said that "National Union has breached its policy obligations by failing to permit NYU to make a settlement demand." (*Id.*) Plaintiff's counsel also provided the case assessment Mr. Hayward asked for and requested that National Union respond to the settlement request by August 14. There is no response in the record.

## DISCUSSION

Plaintiff commenced this action on August 21, 2015, seeking a preliminary injunction that would (1) force National Union to reimburse his past defense costs and pay those costs going forward, and (2) force National Union to start settlement talks with the plaintiff in the Underlying Action on behalf of all defendants, or allow Plaintiff to engage in settlement talks on his own.

## I. Legal Standard

■■■ "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the defendant by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir.2007) (emphasis in original). "To justify a preliminary injunction, [the movant] must show (i) likelihood of success on the merits; (ii) irreparable harm; (iii) that the balance of the hardships decidedly tip in [the movant's] favor; and (iv) that the public interest would not be disserved by granting the injunction." *Lawsky v. Condor Capital Corp.*, 2015 WL 4470332, at *5 (S.D.N.Y. July 21, 2015).

■■■ "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citations omitted). To adequately meet the irreparable harm requirement:

> [P]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.

*Id.* at 118 (quotation marks, alterations, and citations omitted). As the Second Circuit has said, monetary loss is the quintessential form of reparable injury. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm.").

In addition, when a party seeks a mandatory injunction that requires the defendant to affirmatively act—as Plaintiff does here—the burden is higher. "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir.2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n. 4 (2d Cir.2010)).

Several of my colleagues have found that a preliminary injunction seeking defense costs is not subject to the higher standard, and that failure to advance such costs constitutes irreparable harm. *See XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F.Supp.2d 263, 272 (S.D.N.Y. 2012); *In re WorldCom, Inc. Sec. Litig.*, 354 F.Supp.2d 455, 463 (S.D.N.Y.2005). But in both of those cases, the issue was *whether* defense costs should be reimbursed, not *how much* of the defense costs should be reimbursed. In *WorldCom*, for example, the insurer claimed that it was under *no* obligation to advance defense costs. In such a situation, an insured might find himself so injured by the failure to mount an effective defense that only injunctive relief would be adequate. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 354 F.Supp.2d 455, 469 (S.D.N.Y.2005). As Judge Cote said,

> It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation. The ability to mount a successful defense requires competent and diligent representation. The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin—each of which is an intangible but very real burden.

*Id.* That is not the case here, where National Union has (belatedly) paid what it believes to be reasonable defense costs and agreed to continue advancing such costs on an ongoing basis.

Plaintiff also seeks an order enjoining National Union to grant him settlement authority and to pay any settlement he reaches—a kind of relief that undoubtedly changes the status quo by requiring National Union to affirmatively act. Therefore, at least the part of the motion seeking such authority must be judged by the higher standard for mandatory injunctions.

## II. Plaintiff has not shown that he is entitled to injunctive relief

As an initial matter, Plaintiff asks this court to consolidate the preliminary injunction hearing with the trial on the merits. Under Fed.R.Civ.P. 65(a)(2), this court has discretion to order such consolidation. *See D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 158 (2d Cir.2002). But because there remain factual disputes about which discovery may be important, the request is denied.

### A. Plaintiff is not entitled to a preliminary injunction directing Defendant to reimburse all of Plaintiff's attorneys' fees

At the time Plaintiff filed his motion for a preliminary injunction, National Union had not reimbursed him for any defense costs. Indeed, it had not even acknowledged that he was currently entitled to reimbursement under the Policy. But now that National Union has reimbursed Plaintiff for what it considers "reasonable" costs, and has indicated that it will continue to do so in the future, Plaintiff's remaining argument is that he needs injunctive relief to get the full amount he has paid and is paying his presently-re-

tained counsel. No such injunctive relief is warranted, because any harm Plaintiff suffers from not receiving an amount above what National Union has already reimbursed him is compensable in money damages. *See JSG Trading Corp., supra,* 917 F.2d at 79. Plaintiff's motion fails even under the lower standard for prohibitory injunctions.

This case is not like those in which the insured was not being advanced any defense costs at all. For example, in *In re WorldCom, Inc. Sec. Litig.,* 354 F.Supp.2d 455 (S.D.N.Y.2005), a director sued several insurers for failure to advance defense costs under an excess D & O liability policy. The insurers argued that they relied on false financial statements provided by the company in its application for insurance, which rendered the policies void *ab initio;* the insurers also argued and that they had effectively rescinded the policies. The dispute was over whether the insurers were required to advance the fees *at all,* not whether they were advancing a reasonable amount of fees. Judge Cote held that in such a dire situation, where the insured was receiving *no* advancement of defense costs, he suffered irreparable harm. After finding that the insured was likely to succeed on the merits, the court granted the preliminary injunction.

But here National Union has reimbursed Plaintiff for what it considers reasonable fees and has stated its intention to continue advancing reasonable defense costs. Plaintiff suffers no irreparable harm because he and National Union differ on what constitutes "reasonable" defense costs. He can bring a suit for money damages, and there will be an adjudication about the reasonableness of National Union's position.

■ In his Reply Brief, Plaintiff argues that National Union's partial payment does not alleviate his irreparable harm. (Plaintiff's Reply Memorandum in Support of

Plaintiff's Motion for Preliminary Injunction at 5 (Docket # 17).) Plaintiff decries the fact that the "promise of partial reimbursement came only *after* National Union spent months ignoring Stuckey's demands for reimbursement; *after* Stuckey was forced to commence this action to seek a preliminary injunction; and *after* National Union and Stuckey's counsel engaged in negotiations about settling this preliminary injunction action, which were ultimately unsuccessful." (*Id.* (emphases in original).) In other words, Plaintiff accuses National Union of behaving inequitably. But these arguments do not address the issue of irreparable harm. Even assuming National Union behaved inequitably, "inequitable conduct alone cannot justify the entry of a preliminary injunction. The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction." *Buckingham Corp. v. Karp,* 762 F.2d 257, 262 (2d Cir. 1985).

■ Plaintiff fails to establish that he is being irreparably harmed by National Union's failure to advance the disputed portion of his defense costs. Fee disputes between attorneys and clients—or attorneys and third-party payors—are par for the course in high-stakes litigation, and the reasonableness of attorneys' fees is a frequently-tried issue. Plaintiff has not come close to establishing that it would be difficult—let alone very difficult—to quantify damages at trial. But "irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." *Tom Doherty Associates, Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 38 (2d Cir.1995). A court sitting in equity should not resolve such disputes when money damages can fully compensate any loss. *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) ("The injury must be one requir-

ing a remedy of more than mere money damages.").

Plaintiff also argues that he might, "as a result of a sudden inability to pay legal fees, ... lose his existing counsel in the middle of (and quite possibly at a key moment in) the Underlying Action." (Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Preliminary Injunction at 6 (Docket # 17).) But Plaintiff offers no evidence that he is unable to continue paying counsel, nor does he identify any realistic prospect that he will "suddenly" become unable to do so. The potential harm he identifies is too speculative to justify the drastic remedy of injunctive relief. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) ("To establish irreparable harm, Plaintiff's must demonstrate an injury that is neither remote nor speculative, but actual and imminent." (Citation and quotation marks omitted)).

■ Although that alone is grounds enough for denying the motion, Plaintiff also has not shown a likelihood of success on the merits entitling him to all the additional fees. Plaintiff does not argue that National Union's refusal to reimburse fees for administrative work, block-billed time, duplicative effort, excessive hours, or non-billable activities is somehow unreasonable or contrary to the terms of the Policy. He does not appear to have asked National Union for clarification of the deficiencies identified after its invoice review, and the parties do not appear to have even discussed whether some or all of the flagged deficiencies might be remediable (*e.g.*, the block-billed time) or turn out to be reimbursable (*e.g.*, the pre-NYU-tender billing). Plaintiff does argue that the hourly cap is unreasonable, but that is a matter on which reasonable minds could differ—although I recognize that the numbers are low for legal representation in New York City absent the sort of negotiated rates that large consumers of legal services (like insurance companies) negotiate in exchange for providing volume business. Plaintiff certainly has a case that National Union's rate cap is unreasonable—especially since he had no knowledge that National Union was insuring him when he selected counsel. But that is a matter for trial.

In short, Plaintiff has not shown that he is entitled to injunctive relief for additional defense costs.

**B. Plaintiff is not entitled to a mandatory injunction giving him unlimited settlement authority in violation of the terms of the Policy**

Plaintiff requests a preliminary injunction "ordering National Union to authorize and fund a settlement in the Underlying Action, as required by the terms of the Policy." (Plaintiff's Memorandum of Support of Plaintiff's Motion for Preliminary Injunction at 15 (Docket # 5).) He further describes the relief sought in his Proposed Order to Show Cause. He wants the court to:

(1) Declar[e] that Stuckey may henceforth negotiate and consummate a settlement agreement with the plaintiff in the Underlying Action without involving National Union, and without Stuckey violating the Policy; [and]

(2) Declar[e] that any settlement which may be reached between Stuckey and the plaintiff in the Underlying Action is fair and reasonable such that National Union is obligated to indemnify Stuckey for the settlement amount.

(*See* Order to Show Cause, ¶ 7–8 (Docket # 16).)

Plaintiff's second request is ridiculous on its face. I cannot very well bless as reasonable, let alone order National Union to bless as reasonable, a settlement that has not yet been negotiated and so is of inde-

terminate amount. I will, therefore, limit discussion to Plaintiff's first request.

■ Plaintiff's request for an injunction authorizing him to conduct settlement talks on his own without violating the Policy fails to satisfy any of the requirements for injunctive relief.

First, Plaintiff has shown no likelihood of succeeding on the merits of a claim that he be allowed to enter into any settlement he chooses with the plaintiff without involving National Union and without violating the Policy. On the contrary, Plaintiff seeks relief that expressly contradicts the terms of the Policy. Under the Policy, National Union must consent to any settlement. The Policy provides that Plaintiff "shall not admit or assume any liability or incur any Defense Costs without the prior written consent of the Insurer." (Compl., Ex. F, Policy § 8.) It also provides that, "the Insurer may withhold consent to any settlement, stipulated judgement or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy." (Id.) Second, National is expressly permitted to "effectively associate with the insureds in the defense of any Claim ... including but not limited to negotiating a settlement." (Id.) In short, it would violate the Policy for Plaintiff to settle without involving National Union; he cannot pretend otherwise.

■ Plaintiff hints at an argument that National Union should be precluded from relying on its rights under the Policy because of past bad faith failures to authorize settlement. In support of this, he points to two alleged failures by National Union. First, he argues that Mr. Hayward refused to intervene and bring to the table the National Union claims handler in charge of the NYU claims. This failure, Plaintiff says, frustrated his ability to settle with the plaintiff in the Underlying Action, because the plaintiff demands a comprehensive settlement with both Stuckey and NYU. Second, he argues that National Union failed to respond to his August 2015 request that National Union authorize a settlement offer—a request made two weeks before filing the present motion. Plaintiff claims that because of these failures, "repeated overtures to settlement by the plaintiff in the Underlying Action have gone unresponded [sic]." (Plaintiff's Memorandum of Support of Plaintiff's Motion for Preliminary Injunction at 14 (Docket # 5).)

■ But these episodes do not constitute a "clear showing" of bad faith failure to authorize settlement that would warrant stripping National Union of its contractual rights. Assuming New York law applies,[1] bad faith failure to settle requires a showing that the insurer failed to treat the insured's interests equal to its own, which "can be shown by 'a pattern of behavior evincing a conscious or knowing indifference to the probability that *an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted.*'" *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 399 (2d Cir.2000) (emphasis added) (quoting *Pavia v. State Farm Mutual Automobile Insurance Co.,* 82 N.Y.2d 445, 453–54, 605 N.Y.S.2d 208, 626 N.E.2d 24 (1993)). As a threshold matter, it is not even clear that a bad faith argument can proceed absent a concrete risk of personal exposure to the insured, and Plaintiff has not even suggested that a potential jury award or settlement amount would exceed

---

1. The Policy is silent about choice of law, but the parties' briefs assume that New York law applies. Such tacit consent "is sufficient to establish choice of law." *Photopaint Technologies, LLC v. Smartlens Corp.,* 335 F.3d 152, 160 n. 8 (2d Cir.2003) (quoting *Krumme v. WestPoint Stevens, Inc.,* 238 F.3d 133, 138 (2d Cir.2000)).

the Policy limits. In any event, there is no "pattern of behavior" here suggesting that National Union was indifferent to the possibility that Plaintiff would be personally liable for a large judgment.

Of the two events that Plaintiff identifies, one is irrelevant and the other is insufficient to establish bad faith.

National Union's alleged failure to authorize NYU to join in settlement talks is irrelevant. Plaintiff himself admitted National Union was more than willing to facilitate settlement between Stuckey and the plaintiff in the Underlying Action months ago. (*See* Compl., Ex. L.) The plaintiff in the Underlying Action refuses to talk settlement with just one defendant. Plaintiff does not ask the court to compel NYU to discuss settlement so that he can, and frankly, I see no way that I could do so— NYU has its own interests, and they are far from congruent with Plaintiff's.

That leaves one incident which could plausibly form the basis for a charge of bad faith against National Union—its failure to respond to Plaintiff's August 10, 2015 request for settlement authority. But, as Plaintiff must concede, National Union's claims handler wrote on September 3, 2015, to express National Union's desire to facilitate a global resolution of the Underlying Action. (Declaration of John Crossman in Support of Plaintiff's Reply Memorandum, Ex. 5 (Docket # 18).) Although this email did not address Plaintiff's specific settlement request, it does show National Union's willingness to facilitate a resolution. As much as Plaintiff would like this court to ignore such a belated overture, I cannot. Plaintiff has brought forth no evidence to support a showing that National Union acted in such bad faith that he should be permitted to engage in settlement talks without it.

■ Second, Plaintiff has not shown that he will suffer irreparable harm in the absence of injunctive relief. The only inci-dent that directly relates to the relief he seeks—that is, the only incident that relates to *his* settlement authority, as opposed to NYU's settlement authority—was a purported failure by National Union to respond to Plaintiff's request for settlement authority, made just weeks before filing the instant lawsuit. Plaintiff is not irreparably injured by having to wait a few weeks for National Union to respond to his inquiries. To the extent that Plaintiff argues such delay will result in a worse settlement, then so much the worse for National Union. Under the Policy, National Union must indemnify Plaintiff for Loss occurring as a result of a covered claim. Assuming no exclusions apply, National Union would be paying for the "worse" settlement that Plaintiff anticipates. That might harm National Union, but it does not harm Plaintiff, let alone irreparably so.

Plaintiff's other arguments for the irreparable harm associated with the lack of settlement authority are contingent on his claims for defense costs. (*See* Plaintiff's Memorandum of Support of Plaintiff's Motion for Preliminary Injunction at 16 (Docket # 5).) Now that those costs are being advanced (at least in part), Plaintiff is no longer at risk of "compromised" representation or "suffer[ing] the impact of an adverse judgment in the Underlying Action resulting from an inability of being able to continue to pay for adequate representation." (*Id.*) True, Plaintiff and Defendant have disputes over the reasonableness of Plaintiff's defense costs, but Plaintiff has not demonstrated that National Union's position is unreasonable. Plus, it's only money, and where injury can be compensated in damages, it is not irreparable.

■ Third, the balance of hardships does not tip in Plaintiff's favor. After National Union agreed to advance reasonable

defense costs, Plaintiff's hardship was lessened considerably. But allowing Plaintiff to settle the case without National Union would be an extreme hardship on National Union that contradicts the express terms of the Policy.

■ Fourth, the public interest would not be served by granting Plaintiff's request. Although Plaintiff is right that the public interest is served by the enforcement of contracts, this interest cuts against him. The Policy requires Plaintiff to obtain the consent of National Union for all settlements. (Compl., Ex. F, Policy § 8.) It permits National Union to "effectively associate with the insureds in the defense of any Claim ... including but not limited to negotiating a settlement." (Id.) There is no countervailing public interest in Plaintiff obtaining a speedy response to his request for settlement authority.

Although neither party cites to any cases discussing injunctive relief in this context, I find instructive the reasoning of a district court facing a similar question. In SW Indus., Inc. v. Aetna Cas. & Sur. Co., 646 F.Supp. 819 (D.R.I.1986), Judge Pettine denied an insured's request for a preliminary injunction that would "enjoin each insurance company from breaching their alleged obligations to contribute to any settlement reached and from challenging the settlement amount." Id. at 820. In that case, the plaintiff was a corporation that owned an Ohio factory. The corporation maintained insurance policies that it argued covered the claims of a former employee who sued the corporation for intentionally exposing him to toxic chemicals.

While the corporation engaged in settlement negotiations with the plaintiff-employee, several of the corporation's insurance providers sought declaratory relief as to their respective responsibilities; the corporation also sought a preliminary injunction to ensure that it could negotiate a

settlement with the plaintiff-employee that the insurers would be required to indemnify. Judge Pettine held that injunctive relief was not available because, among other deficiencies, there was no irreparable harm. Id. at 822–23. Any failure to indemnify a settlement authorized under the polices could be remedied by money damages "under an action for breach of contract." Id. at 822. So too here.

If Plaintiff does manage to show any harm from National Union's failure to authorize a timely settlement, he can recover money damages in a suit for breach of contract (assuming a court finds that failure to authorize a timely settlement breaches National Union's Policy obligations). And if National Union refuses to indemnify Plaintiff for a settlement that he enters into consistent with the terms of the Policy, then he can bring a breach of contract claim for that too. Plaintiff has an adequate remedy at law, assuming he could prevail on the merits of a claim that directly contradicts the express terms of the Policy. He has not made the "clear showing" required to entitle him to a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction is denied. The Clerk of the Court is directed to terminate the motion and remove it from the Court's list of pending motions.